723 A.2d 1278 (1999)
STATE of New Jersey, Plaintiff-Respondent,
v.
Steven GONZALEZ, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted February 2, 1999.
Decided March 2, 1999.
Ivelisse Torres, Public Defender, for defendant-appellant (Steven W. Kirsch, Assistant Deputy Public Defender, of counsel and on the brief).
Patricia A. Hurt, Essex County Prosecutor, for plaintiff-respondent (Maryann K. Lynch, Assistant Prosecutor, of counsel and on the brief).
Before Judges PRESSLER, KLEINER, and STEINBERG.
The opinion of the court was delivered by KLEINER, J.A.D.
Tried to a jury, defendant Steven Gonzalez was convicted of second-degree conspiracy to commit robbery, N.J.S.A. 2C:15-1 and N.J.S.A. 2C:5-2 (count one); first-degree robbery, N.J.S.A. 2C:15-1 (count two); reckless manslaughter as a lesser-included offense of first-degree murder, N.J.S.A. 2C:11-46(1) (count three); felony murder, N.J.S.A. 2C:11-3a(3) (count four); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5b (count five), and second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4a.[1]
At sentencing, the trial judge merged defendant's convictions on count six with defendant's conviction on count two. The judge then merged defendant's convictions on counts one, two, and three with defendant's conviction on count four. Defendant was sentenced to a custodial term of forty years with a thirty-year period of parole ineligibility *1279 on count four, and to a term of five years on count five to be served concurrently with the sentence imposed on count four. Appropriate statutory penalties were imposed.
On appeal, defendant raises two point of error:
POINT I
THE TRIAL JUDGE FAILED TO DEFINE THE ELEMENTS OF A CRIMINAL ATTEMPT IN HIS INSTRUCTION ON ROBBERY; THUS, DEFENDANT'S ROBBERY, CONSPIRACY AND FELONY MURDER CONVICTIONS MUST BE REVERSED BECAUSE THERE WAS NO JURY FINDING ON THE ELEMENTS OF ATTEMPT. (Not Raised Below)
POINT II
A CLAWANS CHARGE SHOULD NOT HAVE BEEN GIVEN TO THIS JURY WHEN THERE WERE CLEARLY LESS DRASTIC ALTERNATIVES.
We have carefully reviewed defendant's second point of error in light of the trial record, the arguments of counsel, and the applicable law and conclude that defendant's contention is clearly without merit. See R. 2:11-3(e)(1)(E).
As to defendant's first point, although defendant failed to raise any objection to the judge's charge at trial, we conclude that the charge as given to the jury on the counts of the indictment charging first-degree robbery and felony murder did not fully and adequately explain the standard of culpability for attempt and thus the error constitutes plain error. See R. 2:10-2; State v. Rhett, 127 N.J. 3, 5, 601 A.2d 689 (1992); State v. Martin, 119 N.J. 2, 15, 573 A.2d 1359 (1990). We are thus constrained to reverse defendant's conviction and to remand to the Law Division for a new trial.

I
A brief review of the evidence presented in the State's case will assist in explaining our ultimate conclusion.
On April 11, 1996, the Newark Police Department was notified that a man had been shot at 120 Clinton Avenue. Two officers were dispatched to investigate. They found the victim, Jose Figueroa, lying on a sidewalk, bleeding from an apparent gunshot wound and unable to respond to questions. Before the victim was transported to the hospital, his personal belongings, including a gold-colored watch, two rings, and $121, were turned over to one of the investigating police officers. Figueroa died the following morning without regaining consciousness.
During the ensuing investigation, the police were able to find several individuals who had some knowledge of the events preceding the shooting. Three of those individuals who were interviewed appeared as State's witnesses at trial: Fred Moore, Zora Stewart, and Rafael Ortiz.
Fred Moore informed the officers that while standing approximately thirty feet from the entrance to 86 Brunswick Avenue, he saw defendant and at least two other men approach that address with the victim. He was able to identify defendant, whom he had known for several years, and one of the other men with defendant as Raheem Sharif Williams, but was unable to identify any other person. He indicated defendant, one unidentified man, and the victim entered 86 Brunswick Avenue while Williams remained outside. Shortly thereafter he heard what he described as a "rumble" from within the building. He entered the vestibule of the building to investigate the noise that he had heard. As he entered the building, he heard two gunshots. Without making any other observation, he exited the building. He then saw defendant holding his stomach exit the building and leave the area. He also saw several other individuals exit the building and leave the area. Among those leaving the area was co-defendant Williams. During the course of the investigation, Moore identified defendant's photograph in an array presented to him by a detective. In a separate array he also identified the photograph of a woman.[2]
*1280 Zora Stewart, a resident of 86 Brunswick Avenue, heard a gunshot and observed from her second floor window the victim exit the building and walk in the direction of Clinton Avenue. As the victim left the Brunswick address, she observed him speak with a passing pedestrian and lift his shirt.[3] Thereafter, when she heard police sirens, she drove to Clinton Avenue where she saw the victim inside a police emergency vehicle. She informed the police that the shooting had occurred at 86 Brunswick Avenue.
Rafael Ortiz, a teenager who lived in the area, informed the police that on the morning of this crime defendant approached him and informed him that he intended to rob the "older guy" of his money, rings, and watch. Ortiz claimed that defendant asked him if he wanted to help commit the robbery. Ortiz declined. Ortiz observed defendant retrieve a gun from the waistband of a woman named Rashida. He indicated that he saw defendant and the "older man" enter 86 Brunswick Avenue, heard two gunshots, and saw defendant leave the building. He did not see the "older man" leave. Ortiz then identified defendant from a photographic array displayed to him by one of the investigating officers.
On June 5, 1996, defendant appeared at police headquarters intending to surrender on an outstanding bench warrant. Defendant, after being given Miranda[4] warnings gave an inculpatory statement. Defendant admitted that he was approached by Rashida Smith, who requested him to assist her and Raheem Williams in robbing the victim "because he was showing a lot of cash." Defendant further indicated that once he entered the apartment building with the victim a scuffle ensued. Defendant described the event as follows:
So I walked to the man and asked him in Spanish what he wanted.
He told me in Spanish that he wanted some coke, so I told him to follow me, and he followed me and Raheem and Rashida were behind me.
I took him to the little hallway in 86 Brunswick.
...
The man followed me into the hallway. Raheem and Rashida waited outside.
So when I said, do you have money to cop, he said yeah, he turned his back, I went behind him and grabbed him in a headlock.
He fought me back by lifting me up, then Rashida ran in and told me, "Chino, [defendant's street name], I got the joint, [vernacular for a weapon] do you want the joint," I let the man go, I ran toward Rashida, I grabbed the gun.
When I grabbed the gun, I told him, "Yo, give the money, give me the money," he came toward me from behind and grabbed my arm.
A shot went off into the air and I held the trigger back so no more shots could go off because I could have got shot or Rashida, the one who was helping me could have got shot.
That's when Rashida pulled out her mace and tried to mace him, but she was macing me.
When she maced me and him, he let me go, that's when he punched me on the left side of my face, so I took a step back, I pointed the gun at him, and he came toward me, that's when I fired, that's when I fired the second shot.
I went outside. I gave the gun back to Rashida, and then I took off my sweater and gave it to Raheem.
Raheem and me walked down Brunswick to Astor, down Astor to Penn Avenue, Rashida stayed on Penn Avenue and I went to my uncle's house on Wright Street.
Q. What did Raheem do after you gave him your shirt [sic]?
*1281 A. He left. We divided. I don't know where he went.
Based upon defendant's statement, the police returned to 86 Brunswick Avenue to conduct an additional search of the premises. They discovered a bullet casing in the ceiling of the building's vestibule. A similar bullet was removed from the victim's body in an autopsy performed following his death.
Defendant testified in his own defense. He recanted the statement he had given to the police. Although he testified that he had been in the immediate vicinity of the shooting, he contended that at all times he remained on a nearby street corner talking with friends. After he heard gunshots and saw an unidentified black man leave the apartment building, he and his friends left the area. He denied any involvement in the criminal episode and claimed that the inculpatory statement he gave to the police merely parroted information he learned from the police during an interview preceding his statement.

II
Despite the compelling evidence presented by the State as to defendant's involvement in this criminal episode, the State was unable to offer any evidence that the victim, Figueroa, was actually robbed. In order to sustain the felony murder charge, the State was therefore obliged to prove beyond a reasonable doubt that defendant had attempted to commit robbery and in the course thereof the victim was shot and died. In this case the judge failed to define "attempt" and made no reference within the entire charge to N.J.S.A. 2C:5-1.
In pertinent part, N.J.S.A. 2C:5-1, Criminal Attempt, provides:
a. A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:
(1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be; (emphasis added).

...
(3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.
b. Conduct shall not be held to constitute a substantial step under subsection a(3) of this section unless it is strongly corroborative of the actor's criminal purpose.

[emphasis added.]
In the discussion of "attempt," Cannel, New Jersey Criminal Code Annotated, comment 3 on N.J.S.A. 2C:5-1 (1998), provides:
An attempt must be purposive; no lesser mental state will suffice. This is so "not only because it is so defined by statute, but because one cannot logically attempt to cause a particular result unless causing that result is one's `conscious object,' the distinguishing feature of a purposeful mental state."
[Ibid. (quoting State v. Robinson, 136 N.J. 476, 485, 643 A.2d 591 (1994)) (other citations omitted).]
Additionally,
The requirement of purpose exists even if the underlying offense specifically requires a lesser standard. Thus, for example, purpose is required for attempted murder even though only knowledge is required for murder.
[Ibid. (citing State v. Rhett, 127 N.J. 3, 6, 601 A.2d 689 (1992)) (other citations omitted).]
Assuming the jury rejected defendant's trial testimony which recanted his prior inculpatory admission, and assuming the jury relied solely upon the evidence presented by the State's witnesses and defendant's inculpatory admission, it seems clear that the State established that defendant had an intent, as expressed to Ortiz, to rob Figueroa. What actually occurred once defendant, Williams, and Figueroa entered the premises at 86 Brunswick is simply unknown.
*1282 According to Ortiz, defendant received a gun by retrieving the gun from the waistband of Smith's pants before entering the building. Additionally, Ortiz indicated that only defendant and the victim entered the building, while Williams and Smith remained outside. Ortiz then heard one gunshot and saw Williams and Smith run from the scene.
As we have noted, Moore did not indicate that a woman was with the group of men who approached 86 Brunswick Avenue nor did he indicate that he observed a woman exit 86 Brunswick Avenue after he heard two gunshots. Although Moore identified Rashida Smith's photo in an array presented to him, Moore was never asked whether he observed Smith on the afternoon of the crime either before or after the criminal event.
Although defendant's inculpatory statement, if believed by the jury, would allow a conclusion that defendant intended to commit robbery and took a substantial step to commit robbery either when he entered the building with the victim or when he put the victim in a headlock, the jury was not charged by the judge as to the inchoate crime of attempt as defined by N.J.S.A. 2C:5-1. The jury was thus never apprised that attempt requires purposeful conduct as compared to purposeful or knowing conduct, nor was the jury charged as to a "substantial step," N.J.S.A. 2C:5-1a(3), or that a "substantial step" may be dispositive if "it is strongly corroborative of the actor's criminal purpose." N.J.S.A. 2C:5-1b. In this context, we note that N.J.S.A. 2C:15-1 provides:
a. A person is guilty of robbery if, in the course of committing a theft, he:
(1) Inflicts bodily injury or uses force upon another; or
(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or
(3) Commits or threatens immediately to commit any crime of the first or second degree.
An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.
The veracity of defendant's inculpatory statement becomes somewhat questionable when one considers the statement in conjunction with: (1) Ortiz's testimony[5] that defendant retrieved the gun from Smith before entering the building and that she waited outside; and (2) Moore's testimony that failed to specifically indicate that Smith was present at the scene at any time.
As set forth in State v. Martin, 119 N.J. 2, 573 A.2d 1359 (1990):
Correct charges are essential for a fair trial. A charge is a road map to guide the jury and without an appropriate charge a jury can take a wrong turn in its deliberations. Thus, the court must explain the controlling legal principles and the questions the jury is to decide. So critical is the need for accuracy that erroneous instructions on material points are presumed to be reversible error.
[Id. at 15, 573 A.2d 1359 (citations omitted).]
To provide the jury with an accurate "road map," the judge was required to specifically charge in accord with the Model Criminal Charge defining attempt, N.J.S.A. 2C:5-1 (revised 3/17/97), which includes the following suggested language with reference to the concept of "substantial step":
The second element [of substantial step] is that the defendant purposely did ... anything, which, under the circumstances as a reasonable person would believe them to be, is an act or omission that is a substantial step in the course of conduct planned to culminate in (his/her) commission of the crime. However, the step taken must strongly show the defendant's criminal purpose. That is, the step taken must be substantial and not just a very remote preparatory act, and must show that the accused has a firmness of criminal purpose.
*1283 Here, from defendant's inculpatory statement, he entered 86 Brunswick Avenue without a weapon. Arguably, when he commenced the criminal episode by placing the victim in a headlock, he was attempting to commit a theft from the victim's person. The use of a weapon resulted from Rashida Smith's sudden appearance and her offer of a weapon to defendant during his ensuing scuffle with the victim. We note that felony murder is defined in N.J.S.A. 2C:11-3a:
[C]riminal homicide constitutes murder when:

...
(3) It is committed when the actor, acting either alone or with one or more other persons, is engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, sexual assault, arson, burglary, kidnapping or criminal escape, and in the course of such crime or of immediate flight therefrom, any person causes the death of a person other than one of the participants....
Since theft or attempted theft from the person is not a predicate crime for felony murder, the failure to charge the concept of attempt in the predicate offense of robbery, and its specific component, "substantial step," N.J.S.A. 2C:5-1b, constitutes plain error. R. 2:10-2. A clear and correct jury charge is essential to a fair trial. See, e.g., State v. Afanador, 151 N.J. 41, 56, 697 A.2d 529 (1997); State v. Alexander, 136 N.J. 563, 571, 643 A.2d 996 (1994); State v. Rhett, 127 N.J. 3, 601 A.2d 689, (1992) (citing Martin, supra, 119 N.J. at 15, 573 A.2d 1359). Additionally, an erroneous jury instruction in a criminal case is a poor candidate for rehabilitation under the harmless error standard. See, e.g., Afanador, supra, 151 N.J. at 54, 697 A.2d 529; State v. Marrero, 148 N.J. 469, 496, 691 A.2d 293 (1997); State v. Vick, 117 N.J. 288, 289, 566 A.2d 531 (1989). Moreover, a jury charge which fails to fully and accurately define the standard for culpability is deficient. State v. Clausell, 121 N.J. 298, 316-19, 580 A.2d 221 (1990). The jury charge here in omitting any charge as to attempt, N.J.S.A. 2C:5-1, failed to apprise the jury that the standard of culpability is purposeful conduct. Although the judge did define purposeful conduct, he did so in conjunction with his charge as to robbery, N.J.S.A. 2C:15-1, which included a definition of purposeful and knowing conduct. Had the judge correctly charged attempt, N.J.S.A. 2C:5-1, the jury would have been specifically charged that the State had the burden to prove that defendant acted purposefully. We are therefore satisfied that the erroneous jury charge was not harmless.
Reversed and remanded for a new trial.
NOTES
[1] Defendant was indicted with two co-defendants, Raheem Sharif Williams and Rashida Smith. Defendant was tried separately.
[2] From other evidence presented at the trial, it is apparent that the woman identified by Moore was co-defendant Rashida Smith. Moore's testimony did not indicate that Smith was with defendant and the group of men when they approached 86 Brunswick Avenue nor did Moore indicate he saw Smith exit the building.
[3] Stewart testified that when she saw the victim lift his shirt and speak to a pedestrian that she inferred, having heard a gunshot, that the victim had been shot while inside 86 Brunswick Avenue.
[4] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694 (1966). At a pre-trial hearing, the trial judge concluded that defendant's statement was voluntary and would be admissible at defendant's trial.
[5] Much of Ortiz's testimony was presented through the use of a prior statement he gave to the police a few days subsequent to the criminal event, as Ortiz claimed at trial that he could not recall the details of the event apparently due to the passage of time.