753 A.2d 247

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. QUDDOOS FARRAD, A/K/A IKE BOXDALE,
DEFENDANT–RESPONDENT.

Argued May 1, 2000—Decided June 22, 2000.

248

*Jennifer L. Gottschalk,* Deputy Attorney General, argued the cause for appellant (*John J. Farmer, Jr.,* Attorney General of New Jersey, attorney; *Ms. Gottschalk* and *Robert E. Bonpietro,* Deputy Attorney General, on the briefs).

*Jodi L. Ferguson,* Assistant Deputy Public Defender, argued the cause for respondent (*Ivelisse Torres,* Public Defender, attorney).

The opinion of the Court was delivered by

COLEMAN, J.

The critical issue in this appeal is whether the crime of attempted robbery exists under the New Jersey Code of Criminal Justice, *N.J.S.A.* 2C:1–1 to 104–9 (Code). A jury found defendant guilty of first-degree robbery. The Appellate Division vacated the robbery conviction, finding the State failed to establish either the use of force or the threat of immediate bodily injury, proof of which is an essential element of the crime of robbery. The panel declined to mold the verdict to enter a conviction for attempted robbery because it was of the view that such an offense is not cognizable under the Code. Even if attempted robbery had been recognized as an inchoate crime under the Code, the panel would not have molded the verdict to reflect a conviction for that offense because it found that the trial court had erred in permitting the State to inquire into the details of defendant's prior convictions. We conclude that attempted robbery is an offense contemplated by the Code and remand the matter for a retrial on attempted robbery.

I.

On January 25, 1994, at 10:45 p.m., two plain-clothed police officers, Detective Joseph Carroll and Lieutenant Michael Mordaga, observed defendant standing in front of a Roy Rogers restaurant that was scheduled to close at 11:00 p.m. The officers were investigating a number of recent fast-food restaurant hold-ups, all occurring when the target restaurant was about to close for the night. Defendant was wearing a three-quarter length coat, a scarf and a hat, and according to the officers, was walking back and forth in front of the restaurant, peering inside. The officers observed defendant walk around the corner of the building, enter a vestibule extension of the building, and cover his face with his scarf and hat so that only his eyes were visible. As defendant entered the restaurant, the officers followed.

Present in the restaurant were a patron, MacArthur Lee, Jr. (Lee), and a cashier, Camilli Rose (Rose). Lee and Rose were having a conversation. The officers observed defendant walk toward the restaurant counter and place his hand into his right coat pocket. The officers immediately grabbed defendant, and Lieutenant Mordaga removed a loaded revolver from defendant's right pocket. Detective Carroll patted down Lee, and permitted him to leave after determining there was no reason to believe he was involved.

At trial, Detective Carroll testified that defendant, after having been given warnings required by *Miranda v. Arizona,* 384 *U.S.* 436, 86 *S.Ct.* 1602, 16 *L.Ed.*2d 694 (1966), confessed that he found the gun behind the restaurant. An expert in the field of ballistics and firearms testified that the gun was operable and three of the bullets were hollow points.

Rose testified that at around 10:45 p.m. Lee asked to see an employee who was not present, and then asked to see the manager. Rose called for the manager, and sometime during her two to three minute conversation with Lee, defendant entered the premises. Rose stated that she paid no special attention to defendant when he entered, thinking Lee and defendant were together.

Rose observed the officers enter the restaurant, wait for "a little bit," and then walk behind defendant and remove a gun. According to Rose, the manager entered the front of the restaurant after the gun had been removed. Rose testified that she never saw defendant remove the gun from his pocket and that he never said or did anything that threatened anybody. However, Rose was "shaken up" by seeing the gun the police removed from defendant's coat.

Thai Minter, the manager, testified that at around 10:45 p.m. he was in an office in the back of the restaurant preparing to close when Rose called him. When he entered the front of the restaurant, he saw defendant. Minter testified that he asked defendant if he needed help, at which point Minter saw defendant reach into his pocket and begin to pull something out. Minter then noticed the detectives and heard one of them say "he's going for his gun." Minter watched the detectives grab defendant and the gun. Minter claims that when the detectives grabbed defendant, the gun was already out of his pocket.

Defendant testified that he and Lee went to the restaurant together. According to defendant, Lee needed to "check on this job," and handed the gun to defendant. Defendant claimed that he argued with Lee about the gun, but eventually placed it in his pocket. Defendant testified that neither he nor Lee discussed robbing the restaurant. Defendant denied walking around the restaurant or peering through the windows before entering. Defendant admitted that he wrapped himself with his scarf before entering the restaurant, claiming that he did so to keep warm and because he has arthritis. He stated that he entered the restaurant behind Lee, and waited about five minutes for Lee to finish his conversation with Rose. At that point, according to defendant, the two detectives grabbed him from behind. Detective Mordaga felt his pockets, yelled "gun," and pulled out the gun.

Defendant claimed that he did not have his hand in his pocket, and that he never attempted to remove the gun or to rob the restaurant. Defendant testified that after Detective Mordaga

removed the gun, he observed Lee and the officers laughing at him, which caused him to believe that he was set up.

Because defendant testified that he thought Lee and the police set him up, the trial court decided that it would charge the jury regarding entrapment. Based on that ruling, the trial court permitted the prosecutor to use defendant's prior unsanitized New York convictions for attempted robbery and robbery during cross-examination to prove predisposition. The jury was given an instruction limiting the use of the other crime evidence to rebut the defense of entrapment, not as "proof that he committed the offense for which he's being tried."

At the conclusion of the State's case, defendant moved for judgment of acquittal on the robbery count, noting that the State had failed to prove that anyone was threatened or placed in fear. The trial court denied the motion, concluding that the State was not obligated to prove actual fear by a victim, but instead was required to prove only that defendant intended to rob.

The jury found defendant guilty on all counts. His motion for judgment notwithstanding the verdict was denied. After denying the State's motion for an extended term, defendant was sentenced to twenty years with a ten-year period of parole ineligibility for first-degree robbery. Concurrent terms were imposed on the remaining unmerged counts.

In an unpublished opinion, the Appellate Division found three prejudicial errors. First, the State conceded that possession of hollow point bullets is a fourth-degree offense rather than a third-degree offense as stated in the judgment of conviction. The State agreed that a remand was required to correct that sentence.

Second, the Appellate Division ruled that the State presented insufficient evidence to convict defendant of robbery. The panel noted that although the State presented sufficient evidence from which a jury could infer that defendant was attempting to commit a theft, "[t]he evidence ... is uncontroverted that while inside the restaurant, defendant never spoke to Rose, had any eye contact

with her, or in any way indicated that he had a loaded gun and was about to commit a theft." The panel concluded that "the trial judge should have granted defendant's motion for a judgment of acquittal" as to the robbery charge.

The State argued, in the alternative, that if the appellate panel vacated the first-degree robbery conviction, the verdict should be molded to reflect a conviction for the lesser-included offense of second-degree attempted robbery. The panel rejected that argument and concluded that attempted robbery, as a matter of law, is not a cognizable offense under the Code, citing *State v. Carlos*, 187 *N.J.Super.* 406, 455 *A.*2d 89 (App.Div.1982), *certif. denied*, 93 *N.J.* 297, 460 *A.*2d 693 (1983); *State v. Schenck*, 186 *N.J.Super.* 236, 452 *A.*2d 223 (Law Div.1982).

Third, the panel refused to mold the verdict to reflect a conviction for attempted theft because the trial court erred in charging entrapment, and as a result the State was improperly permitted to inquire into the nature of defendant's prior convictions. That error was compounded because defendant withdrew his defense of entrapment and "there was insufficient evidence in the record to establish either statutory or due process entrapment." According to the panel, permitting the jury to hear the details of the prior convictions "had the capacity to influence the jury's assessment of the merits" of the present charges of robbery and attempted theft. The panel found that because defendant admitted to illegal weapons possession, the other-crimes evidence did not have any prejudicial impact upon those convictions. The court remanded for a new trial on attempted theft and for resentencing for possession of hollow point bullets. We granted the State's petition for certification. 162 *N.J.* 488, 744 *A.*2d 1210 (1999).

## II.

The State contends that because defendant had the intent and took substantial steps to commit a theft and threaten the cashier with the gun, defendant should be retried for attempted robbery. The State claims that it is illogical that "the fortuitous intervention

of law enforcement ... converted a first-degree robbery, and perhaps worse, into a third-degree attempted theft."

The State argues that the cases cited by the appellate panel, *State v. Carlos, supra,* and *State v. Schenck, supra,* are not on point. According to the State, both cases recognized that because common law attempted robbery is incorporated into *N.J.S.A.* 2C:15–1, if the sole uncompleted element of the robbery is theft, the crime committed under the Code is robbery because an attempted theft is sufficient. The State argues that "a[n] attempted robbery is *not* entirely subsumed in the robbery statute when a defendant, as here, takes a substantial step toward completing one of the other elements, *e.g.,* threatening another with, or placing another in fear of, bodily injury."

The State also contends that a different Appellate Division panel in *State v. Gonzalez,* 318 *N.J.Super.* 527, 723 *A.*2d 1278, *certif. denied,* 161 *N.J.* 148, 735 *A.*2d 573 (1999), seems to have presumed the existence of the offense of attempted robbery. Lastly, the State argues that "[g]ood police work ... should not be discouraged by the prospect of convicting this defendant of a mere third-degree attempted theft."

## III.

### A.

Robbery is a first- or second-degree offense under the Code. The relevant sections of the robbery statute, *N.J.S.A.* 2C:15–1, read:

a. Robbery defined. A person is guilty of robbery if, in the course of committing a theft, he:

(1) Inflicts bodily injury or uses force upon another; or

(2) Threatens another with or purposely puts him in fear of immediate bodily injury; or

(3) Commits or threatens immediately to commit any crime of the first or second degree.

An act shall be deemed to be included in the phrase "in the course of committing a theft" if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission.

In *Carlos, supra,* the court observed that the crime of robbery consists of the following elements:

(1) theft or attempted theft; (2) intimidating or assaultive conduct consisting of (a) inflicting bodily injury upon another or (b) threatening another with or purposely putting him in fear of immediate bodily injury or (c) committing or threatening immediately to commit any crime of the first or second degree [or (d) using force upon another person]; (3) the intimidating or assaultive conduct must have occurred during the theft or attempted theft or in immediate flight after the theft or attempted theft, and (4) defendant must have acted purposely. Theft is defined, generally, as the unlawful taking or exercise of unlawful control over property of another with purpose to deprive him thereof.... *N.J.S.A.* 2C:20–3. Attempted theft is defined by combining the foregoing definition of theft with *N.J.S.A.* 2C:5–1a. It is an abortive effort to perpetrate a theft.

[*Carlos, supra,* 187 *N.J.Super.* at 412, 455 *A.*2d 89 (footnote and internal citation omitted) ].

▪ A prerequisite for a robbery conviction is a theft or attempted theft. *See N.J.S.A.* 2C:20–3a. One can be found guilty of an "attempt" to commit a particular crime if

acting with the kind of culpability otherwise required for commission of the crime, he:

. . . .

(3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

[*N.J.S.A.* 2C:5–1a].

▪ "Attempt" can be easily defined. The difficulty lies in distinguishing between mere preparation and the substantial step requirement of an attempt. As noted in the 1971 *New Jersey Penal Code Commentary,* Vol. II, at 117, *New Jersey Penal Code, Volume II: Commentary, Final Report of the New Jersey Criminal Law Revision Commission* 117 (1971) (hereinafter *Commentary* ), the Model Penal Code's

approach to this problem is to set forth two requirements which in addition to the requisite criminal purpose, distinguish attempt from preparation: (1) The act must be 'a substantial step in the course of conduct' planned to accomplish the criminal

result, and (2) the act must be 'strongly corroborative' of criminal purpose in order for it to constitute such a substantial step.

Thus, the "substantial step" requirement in the "attempt" statute, *N.J.S.A.* 2C:5–1a(3), is satisfied if a defendant acts in a way that is "strongly corroborative of the 'firmness of his purpose' " to carry out the crime. *State v. Fornino*, 223 *N.J.Super.* 531, 538, 539 *A.*2d 301 (App.Div.), *certif. denied*, 111 *N.J.* 570, 546 *A.*2d 499, *cert. denied*, 488 *U.S.* 859, 109 *S.Ct.* 152, 102 *L.Ed.*2d 123 (1988) (quoting *Commentary, supra,* at 117–18); *N.J.S.A.* 2C:5–1b.

▪ Based on the foregoing principles, a defendant can be convicted of robbery, even if the theft is unsuccessful, if he or she (1) purposely takes a substantial step (2) to exercise unlawful control over the property of another (3) while threatening another with, or purposely placing another in fear of, immediate bodily injury. *See State v. Sein,* 124 *N.J.* 209, 215, 590 *A.*2d 665 (1991).

In the present case, the Appellate Division ruled that the State could not convict defendant of robbery because the aggravating circumstances were not present, that is, defendant never threatened anyone or placed anyone in fear of bodily injury. The State now seeks to retry defendant for attempted robbery. Under the State's theory, defendant committed attempted robbery because all of the elements of such an offense were established, namely that in the course of (1) purposely taking a substantial step (2) to exercise unlawful control over the property of another, defendant (3) purposely took a substantial step (4) to threaten another with, or place another in fear of, immediate bodily injury.

B.

▪ We now focus on whether attempted robbery is a crime under the Code. The analysis must begin with an overview of what the crime of robbery embraces. We have previously acknowledged that *N.J.S.A.* 2C:15–1a " 'manifests a legislative intent to adopt a more expansive concept of robbery' " than New Jersey's common law crime of robbery. *State v. Mirault,* 92 *N.J.* 492, 496, 457 *A.*2d 455 (1983) (quoting *Carlos, supra,* 187 *N.J.Super.* at 414,

455 *A*.2d 89). Robbery under the Code differs from previous versions of robbery in a number of ways. First, *N.J.S.A.* 2C:15–1a authorizes prosecution for robbery when an injury or threat was inflicted upon a victim other than the custodian of the property. *Id.* at 496, 457 *A*.2d 455. Second, it reaches acts committed during an escape from the theft or attempted theft. *Ibid.* Third, it eliminates the element of asportation. *Ibid.* In sum, *N.J.S.A.* 2C:15–1a broadened the robbery statute and "addresses the criminal who is prone to use violence." *Id.* at 499, 457 *A*.2d 455.

The aggravating circumstances required for a robbery can be established if a defendant "[t]hreatens another with or purposely puts him in fear of immediate bodily injury." *N.J.S.A.* 2C:15–1a(2). A would-be robber comes within the statutory language if "he or she only threatens another with bodily injury regardless of its seriousness." *State v. Sewell,* 127 *N.J.* 133, 147, 603 *A*.2d 21 (1992). "[N]o special words and/or conduct are required to make out a threat . . . but the totality of the circumstances presented must be considered." *State v. Smalls,* 310 *N.J.Super.* 285, 292, 708 *A*.2d 737 (App.Div.1998). The focus is on the conduct of the accused, rather than on the "characteristics of the victim and his or her actions." *Sein, supra,* 124 *N.J.* at 217, 590 *A*.2d 665. The Commentaries to the Model Penal Code, whose robbery statute is almost identical to New Jersey's, notes that "[t]he term 'threaten' implies purposeful behavior." *Model Penal Code & Commentaries, Part II* § 222.1 at 114.

We reject defendant's assertion that it is improper to apply the law of attempt to threats. An "attempt" must be purposive. *State v. Rhett,* 127 *N.J.* 3, 6–7, 601 *A*.2d 689 (1992). "[O]ne cannot logically attempt to cause a particular result unless causing that result is one's 'conscious object' . . . ." *State v. Robinson,* 136 *N.J.* 476, 485, 643 *A*.2d 591 (1994) (citation omitted). Defendant argues that "by the time a defendant's actions are sufficiently corroborative of the purpose to constitute a substantial step, they are sufficiently corroborative of the purpose to constitute a threat." The simple response to this is, not always.

Because a "threat" involves purposeful behavior and is to be viewed from the actor's perspective, defendant's theory could be valid in specific instances. However, the commentaries to the Model Penal Code expressly disagree with the assertion that one can never attempt to threaten. In the context of discussing what constitutes a "threat of serious bodily injury," the commentators observe:

> "It should also be noted that there will be cases, *appropriately reached by a charge of attempted robbery,* where the actor does not actually harm anyone or even threaten harm. If, for example, *the defendant is apprehended before he reaches his robbery victim and thus before he has actually engaged in threatening conduct,* proof of his purpose to engage in such conduct will justify a conviction of attempted robbery if the standards . . . [of attempt] are met."
>
> [*Model Penal Code & Commentaries, Part II, supra,* § 222.1 at 114–15 (emphasis added)].

Thus, we are persuaded that the Model Penal Code commentators, and the drafters of our Code, contemplated an attempted robbery charge under the facts of this case. At least one jurisdiction with a similar robbery statute has charged a defendant with attempted robbery under similar circumstances. In *Commonwealth v. Lauer,* 18 *Pa. D. & C.*3d 157 (Pa.Comm.Pl.1981), *aff'd,* 326 *Pa.Super.* 635, 474 *A.*2d 655 (1984), defendant was arrested after being observed standing outside of a bank with a gun under a long raincoat, while wearing a ski-mask, on a warm, sunny day. Defendant was convicted of attempted robbery under 18 *Pa. Cons.Stat. Ann.* § 3701, a robbery statute also modeled after the MPC. *Lauer, supra,* 18 *Pa. D. & C.*3d at 160; 18 *Pa. Cons.Stat. Ann.* § 3701 historical and statutory notes; *see also Commonwealth v. Fulton,* 315 *Pa.Super.* 420, 462 *A.*2d 265, 267 n. 5 (1983) (disagreeing with contention "that there is no such crime as attempted robbery under Pennsylvania law").

No reported decision in this State has directly addressed the issue presented. The panel below cites two cases for the proposition that there is no crime of attempted robbery under the Code: *State v. Schenck, supra,* and *State v. Carlos, supra.* In *Schenck,* defendant entered a bank and presented a note to the teller reading "Give me your money. I have a gun." *Supra,* 186

*N.J.Super.* at 237, 452 *A.*2d 223. Defendant was apprehended, charged and convicted of "entering with intent to steal," and a previous version of robbery, *N.J.S.A.* 2A:141–1.

The Resentencing Panel in *Schenck* ruled that the crime of "entering [a] public place with intent to steal" had been eliminated by the crime of burglary, *N.J.S.A.* 2C:18–2. *Id.* at 238, 452 *A.*2d 223. The State argued that the offense equivalent to "entering a public place with intent to steal" under the Code was not burglary, but rather attempted robbery. The court disagreed, ruling that because robbery is an aggravated form of theft,

> one who attempts to commit a theft (with the aggravating circumstances for a robbery being present) is guilty—if at all—of robbery. In other words he cannot be charged with attempt (*N.J.S.A.* 2C:5–1) to attempt to commit a theft (*N.J.S.A.* 2C:15–1(a)). The State's argument that entering the bank with intent to commit robbery is the equivalent of an attempt to rob lacks rational underpinning.
>
> [*Id.* at 240, 452 *A.*2d 223].

*Schenck* observed that if a defendant attempts to commit a theft *and* the aggravating circumstances are present, then defendant is guilty of robbery, not attempted robbery. The present case involves a slightly different scenario. Here, the State argues that the aggravating circumstances were not present, but defendant took substantial steps toward the use of force or a threat of bodily injury. Therefore, *Schenck* is not instructive.

*State v. Carlos, supra,* is the other case cited by the appellate panel. The issue in *Carlos* was "whether two or four robberies have been committed when a robber obtains money from two victims in the presence of two additional persons after threatening the four of them with a gun." *Supra,* 187 *N.J.Super.* at 409, 455 *A.*2d 89. In *Carlos,* defendant entered a gas station, pulled out a gun and demanded money from the four people present. Property was taken only from two of the four. At trial, the court instructed the jury that defendant could be convicted of robbery if he threatens one victim while attempting to take property from another. The court did not provide the jury with an instruction concerning attempted theft. The jury convicted defendant of four counts of robbery.

On appeal, the court noted the differences between *N.J.S.A.*
2C:15–1 and the prior crime of robbery, *N.J.S.A.* 2A:141–1. The
court observed that "*N.J.S.A.* 2C:15–1 includes the former crimes
of attempted robbery, *N.J.S.A.* 2A:141–1 and *N.J.S.A.* 2A:85–5;
assault with intent to rob, *N.J.S.A.* 2A:90–2; assault with a
dangerous weapon while demanding property, *N.J.S.A.* 2A:90–3,
and larceny of trade secrets from a person by force or violence,
*N.J.S.A.* 2A:119–5.4." *Id.* at 414, 455 *A.*2d 89. However, "the
common law touchstones of the crime, to wit, larceny coupled with
fear, force, intimidation or assaultive behavior," remained intact.
*Ibid.* Therefore, the *Carlos* defendant could not be convicted of
four counts of robbery unless "a theft or attempted theft" from
each person was proved. *Ibid.* Because the trial court did not
instruct on attempted theft and property was taken from only two
victims, two of the robbery convictions were vacated. *Id.* at 416–
17, 455 *A.*2d 89.

*Carlos* does not stand for the proposition that there is no crime
of attempted robbery under the facts of this case. As in *Schenck,*
*supra, Carlos* observes that one who attempts a theft with the
statutory factors present is guilty of robbery. It also sheds light
on whether attempted robbery is a cognizable offense when the
theft and the threat are both uncompleted. The statement ac-
knowledging that the former crime of attempted robbery has been
incorporated into the Code offense of robbery indicates the court's
view that the Code did not abolish the crime of attempted robbery.
*Id.* at 414, 455 *A.*2d 89.

The State cites *State v. Gonzalez, supra,* for support. In
*Gonzalez,* defendant entered a building with the alleged intent to
rob the victim. A struggle ensued, at which point defendant shot
and killed the victim. Whether defendant actually robbed anyone,
however, was unclear. Regardless, a jury convicted defendant of
numerous crimes, including first-degree robbery and felony mur-
der. *Gonzalez, supra,* 318 *N.J.Super.* at 528, 723 *A.*2d 1278.

The Appellate Division vacated the felony murder conviction
and remanded for a new trial based on the trial court's "failure to

charge the concept of attempt in the predicate offense of robbery." *Id.* at 536, 723 *A.*2d 1278. Because the State could not prove that property was taken from the victim, the panel noted that "[i]n order to sustain the felony murder charge, the State was therefore obliged to prove beyond a reasonable doubt that defendant had attempted to commit robbery and in the course thereof the victim was shot and died." *Id.* at 533, 723 *A.*2d 1278. Apparently, the trial court never defined "attempt." The panel remarked that "[s]ince theft or attempted theft from the person is not a predicate crime for felony murder, the failure to charge the concept of attempt in the predicate offense of robbery ... constitutes plain error." *Id.* at 536, 723 *A.*2d 1278.

■ *Gonzalez* supports the State's claim that an attempted robbery is cognizable under the Code. In *Gonzalez,* the defendant shot the victim, and thus the aggravating factors were clearly present. The only issue to be resolved was whether an attempted theft occurred that would constitute a robbery under *N.J.S.A.* 2C:15–1. The *Gonzalez* court recognized that the felony murder statute lists attempted robbery as a predicate felony sufficient to satisfy the felony murder requirement. *Ibid.* That statute provides that a "criminal homicide constitutes murder when ... the actor ... is engaged in the commission of, or an attempt to commit ... robbery." *N.J.S.A.* 2C:11–3a(3). Because felony murder is an absolute liability offense, *State v. Martin,* 119 *N.J.* 2, 22, 573 *A.*2d 1359 (1990), meaning that the defendant's mental state regarding the homicide is not relevant, the Legislature's selection of attempted robbery as a predicate felony for felony murder compellingly establishes that attempted robbery is a crime under the Code. Furthermore, the Model Penal Code suggests that attempted robbery is an appropriate charge when a defendant is apprehended before reaching the potential robbery victim. Hence, we hold that attempted robbery is a crime under the Code.

## IV.

■ Next, we address whether a first-degree robbery conviction that is vacated for lack of proof of aggravating circumstances,

such as threats of violence, can nonetheless be molded into a conviction for a lesser-included offense of attempted robbery. That issue is important because unless the first-degree robbery conviction could be molded to enter a conviction for attempted robbery, in the absence of reversible trial error a second trial would be precluded by double jeopardy principles. The Appellate Division disposed of that issue as a matter of law and held that attempted robbery is not a crime under the Code.

The historical development of the lesser-included offense rule was aptly described by this Court in *State v. Saulnier,* 63 *N.J.* 199, 205–06, 306 *A.2d* 67 (1973):

> The common law doctrine that a defendant may be found guilty of a lesser offense necessarily included in the greater offense charged in the indictment is well recognized in our State. See *State v. Zelichowski,* 52 *N.J.* 377, 383–85, 245 *A.2d* 351 (1968); *State v. Midgeley,* 15 *N.J.* 574, 579, 105 *A.2d* 844 (1954); *State v. Staw,* 97 *N.J.L.* 349, 350, 116 *A.* 425 (E. & A.1922); *cf. State v. Newman,* 128 *N.J.L.* 82, 84, 24 *A.2d* 206 (Sup.Ct.1942); *State v. Johnson,* 30 *N.J.L.* 185, 186–87 (Sup.Ct. 1862); *see also* IV and V *Wharton's Criminal Law and Procedure,* §§ 1799 and 2131 (1957). It was originally designed to aid the prosecution so that it would not fail entirely where some element of the greater offense was not established. *See The People v. White,* 22 *Wend.* 167, 176 (1839); *The People v. Jackson,* 3 *Hill* 92 (1842). But it also redounded to the benefit of the defense since it enabled a finding of lesser consequence (*cf. People v. Mussenden,* 308 *N.Y.* 558, 127 *N.E.2d* 551, 553 (1955)) and precluded a later independent prosecution of the lesser offense as double jeopardy. *See State v. Midgeley, supra,* 15 *N.J.* at 579–80, 105 *A.2d* 844; *State v. Di Giosia,* 3 *N.J.* 413, 419, 70 *A.2d* 756 (1950). Any additional procedural inconvenience it entailed in the trial itself was outweighed by the resulting higher measure of justice and the increased efficiency in judicial administration. *Cf. Knowlton, [Criminal Law and Procedure,* 10 *Rutgers L.Rev.* 97, 98–99 (1955) ].
>
> The Model Penal Code embodies the common law doctrine with a delineation of its contours. Thus it provides that a defendant may be convicted of an included offense and specifies that an offense is to be viewed as included when: "(a) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged; or (b) it consists of an attempt or solicitation to commit the offense charged or to commit an offense otherwise included therein; or (c) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property or public interest or a lesser kind of culpability suffices to establish its commission." *Model Penal Code,* Proposed Official Draft (1962), § 1.07(4). The Code also provides that "The Court shall not be obligated to charge the jury with respect to an included offense unless there is a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense." *Ibid.* § 1.07(5). The proposed New Jersey Penal Code embodies the common law doctrine as thus delineated with,

however, an express direction that the doctrine shall be applicable "whether or not the included offense is an indictable offense." *The New Jersey Penal Code, supra,* Vol. I: *Report and Penal Code* § 2C:1–7(d). This quoted language was specifically designed towards superseding *McGrath. See The New Jersey Penal Code, supra,* Vol. II; *Commentary,* pp. 24–25.

■ The common law that permitted a conviction for a lesser-included offense not specifically charged in an indictment was not changed by the Code.

■ Our Code, which was modeled after the Model Penal Code, adopted the proposed Section 2C:1–7 as the lesser-included offense doctrine and codified it at *N.J.S.A.* 2C:1–8. That statute permits prosecutions for multiple offenses based on the same conduct, but it precludes a conviction for more than one offense, if "[o]ne offense is included in the other, as defined in subsection d. of this section." *N.J.S.A.* 2C:1–8a(1). Pertinent to the present case, a lesser-included offense may consist of "an attempt . . . to commit the offense charged or to commit an offense otherwise included therein." *N.J.S.A.* 2C:1–8d(2). Consequently, when the robbery statute, *N.J.S.A.* 2C:15–1, the statutory rules for construing the Code, *N.J.S.A.* 2C:1–8, and the meaning of criminal attempt are read together, we are persuaded that the Legislature intended the inchoate crime of attempted robbery to constitute a lesser-included offense of robbery. The failure to complete the crime of robbery becomes part of the proofs essential to establish an attempt to commit robbery.

The fact that a trial court must wait until after a finding of guilt has been made before deciding whether multiple convictions are appropriate, *N.J.S.A.* 2C:1–8a(4), supports our conclusion that the Code contemplates that verdicts may be molded. Thus, a finding of first-degree robbery by a jury can be molded to a lesser-included inchoate crime of criminal attempt to commit robbery under the Code based on *N.J.S.A.* 2C:5–1a and *N.J.S.A.* 2C:1–8d(2). *Accord State v. Washington,* 60 *N.J.* 170, 173, 287 *A.*2d 1 (1972) (reducing first-degree murder to second-degree murder); *State v. Mann,* 244 *N.J.Super.* 622, 628–29, 583 *A.*2d 372 (App.Div. 1990) (reducing third-degree theft to a fourth-degree crime and

discussing inclusion of attempt as a lesser-included offense of the completed crime); *State v. Alexander,* 215 *N.J.Super.* 522, 531, 522 *A.*2d 464 (App.Div.1987) (discussing lesser-included offenses).

 The authority to mold the verdict is also based on the trial court's "power to enter a judgment of conviction for a lesser included offense where the jury verdict necessarily constitutes a finding that all the elements of the lesser included offense have been established and where no prejudice to the defendant results." *State v. Greenberg,* 154 *N.J.Super.* 564, 567–68, 382 *A.*2d 58 (App.Div.1977), *certif. denied,* 75 *N.J.* 612, 384 *A.*2d 842 (1978). A guilty verdict may be molded to convict on a lesser-included offense even if the jury was not instructed on that offense if "(1) defendant has been given his day in court, (2) all the elements of the lesser included offense are contained in the more serious offense and (3) defendant's guilt of the lesser included offense is implicit in, and part of, the jury verdict." *State v. Hauser,* 147 *N.J.Super.* 221, 228, 371 *A.*2d 89 (App.Div.), *certif. denied,* 75 *N.J.* 27, 379 *A.*2d 258 (1977).

## V.

 Whether the first-degree robbery conviction in this case should be molded into attempted robbery also requires a determination whether molding the verdict would, in view of the State's failure to prove the aggravating circumstances, violate double jeopardy principles. Also relevant to our ultimate disposition is whether the Appellate Division properly determined that the admission of other-crimes evidence deprived defendant of a fair trial on the robbery count.

## A.

Defendant argues that because attempted robbery was not submitted to the jury in the prior trial, he cannot now be tried on that offense. Based on our prior discussions, defendant's reliance on *State v. Schmidt,* 110 *N.J.* 258, 540 *A.*2d 1256 (1988), is

misplaced. In *Schmidt*, this Court ruled that because a conspiracy charge to a jury in a criminal case related only to the substantive crime of drug possession, defendant could not be found guilty of possession of the drugs on the basis of vicarious liability as an accomplice or as a conspirator. *Id.* at 265–66, 540 *A.2d* 1256. The jury in *Schmidt* never found defendant vicariously guilty under the theory of conspiracy. *Id.* at 265, 540 *A.2d* 1256.

In the present case, defendant was indicted for robbery and a jury convicted him of that offense. The jury was instructed that the State was obligated to prove that "it was the defendant's purpose to put another in fear of immediate bodily injury." In rendering its verdict, the jury did not reject any element that the State would be required to prove to obtain a conviction, in a retrial, for attempted robbery or attempted theft, both lesser-included offenses of robbery. Furthermore, the evidence was sufficient to uphold a conviction for attempted robbery. There was sufficient evidence presented to the jury that defendant's purpose for being at the restaurant was to rob its cashier based on defendant's surveillance of the restaurant and then covering his face before entering it. He had walked to within a few feet of the cashier with a loaded gun in his pocket into which he inserted his hand. That evidence established more than mere preparation. It demonstrated a purpose to rob and substantial steps that were taken toward completion of the intended robbery but for the interruption by alert police officers.

A retrial for attempted robbery does not raise double jeopardy or due process concerns. First, a retrial for attempted robbery is mandated by the trial court's error in allowing the use of other-crimes evidence, not because of the insufficiency of the evidence. *See Burks v. United States,* 437 *U.S.* 1, 15–16, 98 *S.Ct.* 2141, 2149–50, 57 *L.Ed.*2d 1 (1978). Second, defendant was arrested on January 25, 1994, the day of the criminal episode. The initial complaint charged defendant with attempted robbery as follows:

Within the jurisdiction of this court [defendant did] attempt to commit the crime of robbery by entering the Roy Rogers family restaurant 193 Essex Street at closing time after adjusting his hat and scarf to partially conceal his face and while armed with a .38 caliber revolver in violation of New Jersey State Statute 2C:5–1; 2C:15–1.

Based on that formal complaint, a probable cause hearing was conducted pursuant to *Rule* 3:4–3 on May 6, 1994. During that hearing, counsel for defendant argued, among other things, that "there was no probable cause that Mr. Farrad was attempting to commit an armed robbery." The prosecution, on the other hand, argued that the proofs established probable cause to believe that defendant "attempted robbery while armed" because the substantial step requirement of *N.J.S.A.* 2C:5–1 had been satisfied. At the conclusion of the probable cause hearing, the trial court found there was probable cause that defendant possessed a handgun without a permit and that he possessed the gun for an unlawful purpose. However, the court found that probable cause did not exist to believe that defendant attempted a robbery. The latter finding has no legal impact because the purpose of the preliminary hearing was solely to determine whether to bind defendant over to await the action of the Grand Jury. *R.* 3:4–3(a); *State v. Smith,* 32 *N.J.* 501, 537, 161 *A.*2d 520 (1960).

In July 1994, a Bergen County Grand Jury indicted defendant for first-degree robbery and four other charges. Defendant filed a motion to dismiss the robbery count of the indictment because there was no evidence that Rose, the Roy Rogers cashier, was placed in fear and because another judge had found no probable cause to believe that defendant had committed an attempted robbery. The trial court denied the pretrial motion, concluding that evidence presented to the Grand Jury established grounds for a *prima facie* conviction for attempted robbery pursuant to *N.J.S.A.* 2C:1–8d(2), *N.J.S.A.* 2C:5–1 and *N.J.S.A.* 2C:15–1. Because the court was of the view that an indictment should not simply charge attempted robbery, it did not dismiss or amend the robbery count.

By the time the jury trial was conducted in April 1996, defendant was well aware of the debate over whether his conduct constituted a robbery or an attempted robbery. Yet, he chose not to request that the jury be instructed on attempted robbery as a lesser-included offense. Whether that was a strategic decision is neither clear nor relevant. What is important is the fact that defendant has been aware of his exposure to a potential conviction for attempted robbery since early 1994 when he was served with the first formal complaint after being arrested on January 25, 1994.

The finding by the Appellate Division that the State had failed to prove that the cashier had been threatened or placed in fear by defendant does not preclude a retrial for attempted robbery. Although those aggravating circumstances are essential to a robbery conviction, neither is required for an attempted robbery. *See Robinson, supra,* 136 *N.J.* at 482–86, 643 *A.*2d 591 (analyzing the law of "attempt"). Defendant's successful appeal of his robbery conviction does not offend double jeopardy considerations because the retrial will be for a lesser-included offense, a molded conviction which simply could not be entered in light of the improper use of other-crimes evidence. That prejudicial evidentiary ruling necessitates a retrial, which would not offend double jeopardy principles. *See State v. Widmaier,* 157 *N.J.* 475, 490–91, 724 *A.*2d 241 (1999).

### B.

Finally, the State no longer challenges the propriety of the Appellate Division's determination that the improper use of other-crime evidence deprived defendant of a fair trial. For the sake of completeness, however, that determination is clearly supported by the record.

### VI.

We reverse the judgment of the Appellate Division that precluded a retrial for attempted robbery and affirm the judgment in all

other respects. The matter is remanded to the Law Division for a new trial on attempted robbery and attempted theft.

*For reversal in part and remandment, affirmance in part*— Chief Justice PORITZ and Justices O'HERN, STEIN, COLEMAN, LONG, VERNIERO and LaVECCHIA—7.

*Opposed*—None.