62 A.3d 327

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. RYAN R. DEHART, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted March 13, 2013—Decided March 22, 2013.

Before Judges AXELRAD, NUGENT and HAAS.

*Joseph E. Krakora,* Public Defender, attorney for appellant (*Stephen W. Kirsch,* Assistant Deputy Public Defender, of counsel and on the brief).

*Jeffrey S. Chiesa,* Attorney General, attorney for respondent (*Frank J. Ducoat,* Deputy Attorney General, of counsel and on the brief).

The opinion of the court was delivered by

HAAS, J.S.C. (temporarily assigned).

In this appeal, we address the issue of whether it was plain error for a police officer to provide hearsay testimony explaining why he included defendant's photograph in a photo array and for the prosecutor to highlight that testimony in summation. We also consider whether the trial court was required to instruct the jury on the elements of attempted robbery even though such an instruction was not requested by defendant.

After reviewing the record in light of the contentions advanced on appeal, we determine the police officer's testimony should not have been admitted and that the prosecutor's summation improperly bolstered the officer's testimony in violation of defendant's constitutional right of confrontation. We further conclude it was plain error to fail to instruct the jury on the elements of attempted robbery. We therefore reverse defendant's convictions and remand for a new trial.

## I.

The State developed the following proofs at trial. Antoinette Boutros is the owner of a convenience store. On June 29, 2009, Boutros was working by herself at the cash register when she saw a man come into the store "going like real fast in the back of the store." Boutros testified she had seen the man before in the store and his face looked familiar. However, she did not know his name. There were other customers in the store at the time and Boutros continued to assist them.

When the other customers left, the man approached the register with a Reese's candy bar in his hand. He put his hand in his pocket and took out a "grey metal stick." Boutros testified the man shook the stick at her and told her to "open the register, I'm not joking, open the register, and don't you dare touch the phone. I'm going to kill you, I'm going to get you." Boutros had originally believed the man was joking, but after he threatened her, she "pressed the panic button" to alert the police.

Boutros testified she became flustered and she was unable to open the register. As the man continued to threaten her, Boutros told him she would "unplug the register" and that he should "take the whole store, leave me alone, don't touch me." She then ran out of the store. The man followed Boutros outside. He had not taken any money from the register and Boutros testified she did not know whether he had taken the candy bar from the store with him. Once outside, the man told Boutros "I'm going to come back and kill you if you call the police." The man then ran away "really, really fast."

Detective Sergeant Robert Stettner arrived at the scene between five and fifteen minutes after receiving the call. Boutros' husband, Lenny, who was also an owner, was at the store when he arrived. Boutros told the detective there was a surveillance video. The detective reviewed it, but he testified the suspect's face was not visible in the footage.

Several days later, Lenny Boutros called Detective Sergeant Stettner. The detective testified Mr. Boutros told him "a customer of his had either called or come in—I'm not exactly sure what he said—but provided the name of [defendant] as the person who" was involved in the incident. Defense counsel did not object to this testimony at trial. Based upon this information, Detective Sergeant Stettner testified he obtained a photo of defendant and included it with five photos of other suspects in a photo array. He then gave the photo array to Detective Teddy Garcia, who showed it to Boutros. When she got to defendant's photo, Boutros said "[t]hat's him, oh my God." Defendant was then arrested.

Tried before a jury on a two-count indictment, defendant was convicted of second-degree robbery, *N.J.S.A.* 2C:15–1a(2) (count one); and third-degree possession of a weapon for an unlawful purpose, *N.J.S.A.* 2C:39–4d (count two). The trial court sentenced defendant to five years in prison, subject to the provisions of the No Early Release Act, *N.J.S.A.* 2C:43–7.2, on count one; and a concurrent three-year term on count two. Defendant was also assessed appropriate fines and penalties.

## II.

On appeal, defendant has raised the following contentions:

POINT I

THE *BANKSTON/BRANCH* ERROR, WHICH OCCURRED WHEN THE PROSECUTOR ASKED A DETECTIVE HOW HE "[G]OT A NAME OF A POTENTIAL SUSPECT," AND THE DETECTIVE RESPONDED BY DETAILING MULTIPLE LEVELS OF HEARSAY IMPLICATING DEFENDANT IN THE CRIME, WAS SO HARMFUL TO THIS CASE—WHERE MISIDENTIFICATION WAS THE DEFENSE—THAT IT CONSTITUTES PLAIN ERROR, WORTHY OF REVERSAL.

POINT II

AS WAS THE BASIS FOR REVERSAL IN *STATE V. GONZALEZ*, THE TRIAL JUDGE CHARGED THE JURY ON ATTEMPTED THEFT AS A BASIS FOR ROBBERY, BUT DID NOT EVER DEFINE EITHER THE *ACTUS REUS* OR THE *MENS REA* OF A CRIMINAL ATTEMPT.

POINT III

THE TRIAL JUDGE ERRED IN REFUSING THE REQUESTED INSTRUC-
TION ON THEFT AND/OR ATTEMPTED THEFT AS A LESSER–INCLUD-
ED OFFENSE.

### A.

■ We first turn to defendant's Point I, where he argues that Detective Sergeant Stettner should not have been permitted to testify about his conversation with Lenny Boutros. The following colloquy took place during the prosecutor's questioning of the detective sergeant:

Q: ... So did you at some point get a name of a potential suspect as the person who may have committed a crime against Ms. Boutros?

A: Yes, I did.

Q: Okay. And how did that happen?

A: Lenny Boutros had called me and said that a customer of his had either called or come in—I'm not sure exactly what he said—but provided the name of [defendant] as the person who—

Q: And now that—Strike that. Were you—Once you got that name, now [defendant] is from the Phillipsburg area, correct?

A: Yes, he is.

Q: Okay. And fair to say it's a small county?

A: Yes.

Q: Small town?

A: Yes.

Q: So were you able to get a photo—a recent photo—a fairly-recent photograph of [defendant] from people in the area or anybody that knows him?

A: I was able to get a photo, yes.

The testimony provided by Detective Sergeant Stettner was clearly hearsay. He told the jury that Lenny Boutros told him that another individual, whom he did not name, told Mr. Boutros defendant was the person involved in the incident at the store. Relying upon *State v. Bankston*, 63 *N.J.* 263, 307 *A.*2d 65 (1973), defendant contends he was denied a fair trial as a result of Detective Sergeant Stettner's testimony because this testimony suggested he was the perpetrator and he had no opportunity to confront either Mr. Boutros or the unnamed informant to dispute this. We agree.

The Confrontation Clause contained in the Sixth Amendment, which applies to the states by way of the Fourteenth Amendment, provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him[.]" The Supreme Court of the United States has held that the Confrontation Clause bars the admission of "[t]estimonial statements of witnesses absent from trial" except "where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." *Crawford v. Washington,* 541 *U.S.* 36, 59, 124 *S.Ct.* 1354, 1369, 158 *L.Ed.*2d 177, 197 (2004).

In *Bankston,* our Supreme Court confirmed that the hearsay rule is not violated when a police officer explains that he approached a suspect or went to a crime scene based "upon information received," because such testimony explains his subsequent conduct and shows that the officer was not acting in an arbitrary manner. *Id.* at 268, 307 *A.*2d 65; *accord State v. Luna,* 193 *N.J.* 202, 217, 936 *A.*2d 957 (2007). However, the *Bankston* Court cautioned that both the hearsay rule and a defendant's Sixth Amendment right to be confronted by the witnesses against him or her are violated if the officer becomes more specific and repeats what another person told the officer linking the defendant to a crime. *Bankston, supra,* 63 *N.J.* at 268–69, 307 *A.*2d 65. According to the Court, "[w]hen the logical implication to be drawn from the testimony leads the jury to believe that a non-testifying witness has given the police evidence of the accused's guilt, the testimony should be disallowed as hearsay." *Id.* at 271, 307 *A.*2d 65.

In *State v. Branch,* 182 *N.J.* 338, 865 *A.*2d 673 (2005), the Court applied the *Bankston* rule to a police officer's explanation for why he included a defendant in a photo array. There, the defendant was convicted of burglary and robbery based on the identification evidence of two witnesses. *Branch, supra,* 182 *N.J.* at 346–47, 865 *A.*2d 673. At trial, "a police detective testified that he included defendant's picture in a photographic array because he had developed defendant as a suspect 'based on information received.' " *Id.*

at 342, 865 *A*.2d 673. Thus, the jury was left with the impression that the detective had some other knowledge implicating defendant in the crime. *Id.* at 348, 865 *A*.2d 673.

The Court found "[t]here was no legitimate need or reason for [the detective] to tell the jury why he placed defendant's picture in the photographic array. The only relevant evidence was the identification itself." *Ibid.* Instead, the jury heard irrelevant, "gratuitous hearsay testimony" that violated defendant's right to confrontation and the rules of evidence. *Ibid.* As a result, the Court reversed the defendant's conviction. *Id.* at 354, 865 *A*.2d 673. *See also State v. Lazo*, 209 *N.J.* 9, 21–24, 34 *A*.3d 1233 (2012) (police officer's hearsay testimony of how he assembled a photo array violated the defendant's right to confrontation).

A similar result is required in this case. Although defendant did not object to the detective sergeant's testimony, its admission was not harmless error under the circumstances of this case. *State v. Castagna*, 187 *N.J.* 293, 312, 901 *A*.2d 363 (2006) (an appellate court will disregard "[a]ny error or omission [by the trial court] ... unless it is of such a nature as to have been clearly capable of producing an unjust result."). Here, defendant's identification, or misidentification, was the main issue at trial. The suspect's face was not visible on the surveillance video. While Boutros was able to give a description of the perpetrator, there was nothing linking defendant to the crime until an anonymous source told Mr. Boutros, who then told Detective Sergeant Stettner, that defendant was the culprit. Permitting this double hearsay into evidence deprived defendant of his right to confrontation.

Moreover, the prosecutor made full use of the hearsay testimony in his summation. The prosecutor told the jury Mr. Boutros had taken "a still" photo from the surveillance video. The prosecutor continued:

> [The victim's] husband took a still. That's his wife. That's his wife that this happened to. The husband took a still and showed it for a week and somebody said I know that face. I wasn't present for the—crime, I wasn't there, I'm not a witness, but I know that face, and that face is [defendant].

The State argues these comments were designed to respond to the argument made by defense counsel "that lazy police work, including that the police did nothing to further their investigation until Mr. Boutros called them with defendant's name, showed reasonable doubt." We disagree. Here, the prosecutor went well beyond arguing the detective sergeant had "received information" that explained his actions. He provided an expanded description of what the anonymous source had told Mr. Boutros. In the process, the prosecutor provided specific information that another person, who was not called as a witness at trial, had linked defendant to the crime. *Bankston, supra,* 63 *N.J.* at 268–69, 307 *A.*2d 65.

The prosecutor's pointed comments improperly bolstered the victim's identification of defendant in a manner that violated his constitutional right of confrontation. That identification was the sole basis for defendant's convictions.

Under those circumstances, we cannot conclude that the error in admitting this hearsay testimony was harmless. We are therefore required to reverse defendant's convictions and sentence and remand for a new trial.

### B.

Although our resolution of defendant's right to confrontation argument is dispositive of this appeal, we also believe a reversal is required because the trial court failed to instruct the jury on the law of attempt. While this failure primarily relates to the robbery charge, the flawed instruction on that charge also infected the instructions the court gave the jury on the weapons offense.

The crime of robbery includes attempted theft. A person commits robbery if "in the course of committing a theft" the person inflicts bodily injury or uses force upon another, threatens another with or purposely puts the other in fear of immediate bodily injury, or commits or threatens immediately to commit a crime of the first or second degree. *N.J.S.A.* 2C:15–1a–(1)–(3). An act is "deemed . . . included . . . 'in the course of committing a

theft' if it occurs in an attempt to commit theft or in immediate flight after the attempt or commission." *N.J.S.A.* 2C:15–1a(3).

Defendant did not request a charge on attempt and did not object when the court charged the jury. Consequently, defendant must demonstrate plain error, that is, error "clearly capable of producing an unjust result." *R.* 2:10–2; *see also State v. Walker*, 203 *N.J.* 73, 89–90, 999 *A.*2d 450 (2010). Defendant made that demonstration here.

Boutros testified she was not able to open the cash register and, when she ran out of the store, defendant followed her. She was not able to testify whether defendant took the candy bar he was holding with him when he left the store. Under these circumstances, the trial court recognized, and the State confirmed at trial, there was no competent evidence of a theft of money, the Reese's candy bar or any other item from the victim. Indeed, in denying defendant's motion for an acquittal at the end of the State's case, the court found "[i]t was an *attempted* robbery." (Emphasis added). Moreover, during the charge conference, the court also denied defendant's request that the jury be charged on a lesser-included offense of theft of the Reese's candy bar defendant allegedly held in his hand when he approached the cash register, because "there's no rational basis for it."

Under those circumstances, the court was required to instruct the jury on the law of attempt as an element of robbery. In accordance with its finding that this matter involved an "attempted robbery" because defendant had not taken anything from the store, the court instructed the jury that the State was required

to prove each of the following elements beyond a reasonable doubt:

1) That the defendant was in the course of committing a theft;

2) That while in the course of committing a theft the defendant threatened another with, or purposely put another in fear, of immediate bodily injury.

... I had said the State must prove beyond a reasonable doubt that the defendant was in the course of committing a theft. In this connection[,] you are advised that an act is considered to be in the course of committing a theft *if it occurs in an attempt to commit the theft* [,] during the theft itself, or in the immediate flight after the attempt or commission.

[ (Emphasis added.) ]

At this point, the Model Jury Charge for "Robbery in the Second Degree" (2009) requires the trial court to "define attempt" for the jury "[i]f attempt is involved." The criminal attempt statute provides in pertinent part:

a. Definition of attempt. A person is guilty of an attempt to commit a crime if, acting with the kind of culpability otherwise required for commission of the crime, he:

(1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;

(2) When causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing such result without further conduct on his part; or

(3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a substantial step in a course of conduct planned to culminate in his commission of the crime.

b. ... Conduct shall not be held to constitute a substantial step under subsection a.(3) of this section unless it is strongly corroborative of the actor's criminal purpose.

[*N.J.S.A.* 2C:5–1(a)–(b); *see also* Model Jury Charge for "Attempt" (2009).]

However, the trial court did not provide the required instruction on attempt, with the accompanying definition of this term, to the jury. Instead, it omitted this part of the charge and only instructed the jury as follows on theft, rather than attempted theft:

Theft is defined as the unlawful taking, or exercise of unlawful control, over *property of another with purpose to deprive her thereof.* I have used the phrase with purpose. You may hear me use that phrase, or word purposely, again. I shall now explain what it means. A person acts purposely with respect to the nature of his conduct, or as a result thereof, if it is a person's conscious object to engage in conduct of that nature, or to cause such a result.

In addition to proving beyond a reasonable doubt that the defendant was in the course of committing a theft, the State must prove beyond a reasonable doubt that while in the course of committing the theft the defendant threatened another, or purposely put another in fear of immediate bodily injury. The phrase bodily injury means physical pain, illness, or any impairment of physical condition. Although no *bodily injury need have resulted, the prosecution must prove that the defendant* either threatened the victim with or purposely put the victim in fear of such bodily injury.

Should you find the State has failed to prove any of these elements of the crime of robbery beyond a reasonable doubt, you must return a verdict of not guilty of

robbery. If you find that [the] State has proved every one of these elements of the crime of robbery then you must find the defendant guilty as charged.

The court did not instruct the jury on the elements of attempt.

It is well settled that "[a]n essential ingredient of a fair trial is that a jury receive adequate and understandable instructions." Correct jury instructions are 'at the heart of the proper execution of the jury function in a criminal trial.' " *State v. Afanador*, 151 *N.J.* 41, 54, 697 *A.2d* 529 (1997) (quoting *State v. Alexander*, 136 *N.J.* 563, 571, 643 *A.2d* 996 (1994) (citation omitted)).

In assessing the propriety of a jury charge, an appellate court examines the entire charge to see whether it was ambiguous or whether it misinformed the jury of the law. *State v. R.B.*, 183 *N.J.* 308, 324, 873 *A.2d* 511 (2005). However, a trial court's "failure to charge the jury on an element of an offense is presumed to be prejudicial error, even in the absence of a request by defense counsel." *State v. Federico*, 103 *N.J.* 169, 176, 510 *A.2d* 1147 (1986) (citations omitted).

Under the circumstances of this case, where there was no evidence of an actual theft, the court was required to instruct the jury on the law of attempt as an element of robbery. *State v. Gonzalez*, 318 *N.J.Super.* 527, 532–37, 723 *A.2d* 1278 (App.Div.), *certif. denied*, 161 *N.J.* 148, 735 *A.2d* 573 (petition for certification); *certif. denied*, 161 *N.J.* 148, 735 *A.2d* 573 (1999) (cross-petition for certification), *abrogated on other grounds by State v. Hill*, 199 *N.J.* 545, 565–66, 974 *A.2d* 403 (2009). The facts in *Gonzalez* are similar to the facts here. In *Gonzalez*, a witness testified that the defendant informed him that he intended to rob an "older guy" of his money, rings, and watch. *Id.* at 531, 723 *A.2d* 1278. There was conflicting witness testimony about whether the defendant had a gun when he entered an apartment building with the victim. *Id.* at 530–31, 723 *A.2d* 1278. The defendant gave an inculpatory statement to police which he recanted at trial. *Id.* at 531–32, 723 *A.2d* 1278.

Despite "the compelling evidence presented by the State as to [the] defendant's involvement in this criminal episode, the State

was unable to offer any evidence that the victim ... was actually robbed." *Id.* at 532–33, 723 *A.*2d 1278. We held in *Gonzalez* that the failure to charge attempt in the context of a robbery, where no theft occurred, constituted plain error. *Id.* at 536, 723 *A.*2d 1278.

We perceive no reason to reach a different result here. There was no competent evidence defendant took anything from Boutros. Therefore, the trial court was required to instruct the jury on the elements of attempt.

■ The State argues that, in view of what it perceives to be overwhelming evidence against defendant, the failure to charge attempt was not plain error. However, we rejected a similar argument in *Gonzalez.* *Id.* at 532, 723 *A.*2d 1278. Moreover, "[e]rroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error." *Afanador, supra,* 151 *N.J.* at 54, 697 *A.*2d 529. Because the court failed to instruct the jury on a critical element of robbery, defendant's conviction under count one would need to be reversed even if his right to confrontation had not been infringed.

■ The flawed instruction on robbery also requires that defendant's conviction for possession of a weapon for an unlawful purpose be reversed. We recognize a jury may render inconsistent verdicts so long as there exists a sufficient evidential basis in the record to support the charge on which a defendant is convicted. *State v. Banko,* 182 *N.J.* 44, 46, 861 *A.*2d 110 (2004). In instructing the jury on the weapon charge, however, the judge stated that the State's contention was "that the defendant's unlawful purpose in possessing the weapon was his purpose to use it unlawfully against the person of the other *in the course of committing a theft* against Antoinette Boutros." (Emphasis added). As we have held, the court's instruction on the robbery charge was fundamentally flawed as it pertained to the definition of "in the course of committing a theft." This error thus infected the court's subsequent instruction that defendant's "unlawful purpose in possessing the weapon" was to use it "in the course of committing a theft" against Boutros. Therefore, defendant's con-

viction on count two would also need to reversed, independent of the violation of defendant's right to confrontation.

In light of our disposition, we will not address defendant's remaining argument that a lesser-included offense should have been presented to the jury. Resolution of that issue is dependent upon the evidence presented at the time of retrial.

Reversed and remanded for further proceedings.