**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2124-17T4

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

IVERY BRINSON,

     Defendant-Appellant.

_____

Submitted January 8, 2019 – Decided January 31, 2019

Before Judges Hoffman and Suter.

On appeal from Superior Court of New Jersey, Law Division, Essex County, Indictment No. 14-05-1420.

Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Deputy Public Defender, of counsel and on the brief).

Gurbir S. Grewal, Attorney General, attorney for respondent (Adam D. Klein, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

A jury acquitted defendant of first-degree murder, N.J.S.A. 2C:11-3(a)(1) and (2), but convicted him of first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a); first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree robbery, N.J.S.A. 2C:15-1; second-degree conspiracy to commit robbery, N.J.S.A. 2C:5-2; first-degree robbery, N.J.S.A. 2C:15-1; second-degree conspiracy to commit carjacking, N.J.S.A. 2C:5-2; first-degree carjacking, N.J.S.A. 2C:15-2; second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and second-degree possession of a weapon with an unlawful purpose. After merging the aggravated manslaughter and robbery convictions with the felony murder conviction, the trial court sentenced defendant to life in prison, subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The trial court also sentenced defendant to a thirty-year term of imprisonment, subject to NERA, on the carjacking conviction, to run consecutively to the felony murder sentence.

Defendant appeals from the convictions and sentence, raising the following issues:

POINT I

THE FELONY MURDER, ROBBERY, AND CONSPIRACY TO COMMIT ROBBERY CONVICTIONS MUST BE REVERSED BECAUSE THE JURY WAS PERMITTED TO CONVICT

2

BASED ON AN UNDERLYING ATTEMPTED THEFT, DESPITE HAVING RECEIVED NO GUIDANCE ON THE LAW OF ATTEMPT. (Not Raised Below)

POINT II

THE AGGRAVATED MANSLAUGHTER CONVICTION MUST BE REVERSED BECAUSE THE JURY EXPRESSLY FOUND THAT DEFENDANT DID NOT COMMIT RECKLESS MANSLAUGHTER, WHICH IS AN INDISPENSABLE COMPONENT OF AGGRAVATED MANSLAUGHTER. (Not Raised Below)

POINT III

THE POSSESSION OF A WEAPON FOR AN UNLAWFUL PURPOSE CONVICTION MUST BE REVERSED BECAUSE THE CIRCULAR DEFINITION WITHIN THE JURY CHARGE ON THAT OFFENSE LEFT THE JURY WITH INSUFFICIENT GUIDANCE TO RENDER A JUST VERDICT. (Not Raised Below)

POINT IV

IF THE FELONY MURDER CONVICTION IS NOT REVERSED, THE MATTER MUST BE REMANDED FOR A RESENTENCING IN WHICH DEFENDANT IS SENTENCED TO CONCURRENT SENTENCES FOR THE FELONY MURDER AND CARJACKING CONVICTIONS. (Not Raised Below)

Finding no merit in defendant's arguments, we affirm his convictions and sentence.

A-2124-17T4

I.

We begin with a summary the most pertinent trial evidence, considering the issues raised on appeal. On June 29, 2013, surveillance video recorded at the Irvington Mini Mart depicted four men entering the store. The gunman had dreadlocks and was wearing khaki shorts and a white tee shirt. The surveillance video depicts Narendrak Patel, the store owner and victim, walking backwards and behind the counter as the individuals walked toward him. The gunman then walked out the door, with the others still standing inside. Moments later, the gunman walked back into the door, produced a handgun, and pointed it at Patel. The gunman stated "you know what it is," apparently commencing a robbery. At this point, Patel walked further behind the counter, bent over, and produced a long stick. The gunman then shot Patel three times, with one bullet causing a fatal wound to Patel's lung.

With Patel on the ground, the gunman and an accomplice went behind the counter. The accomplice pulled items from a New Jersey lottery register, and other items next to the register, and put them into his pockets. The gunman picked items up from the floor, and placed them into his right pocket. The gunman then hopped up and briefly sat on the counter, grabbed items with his right hand, and placed them into his right pocket. Meanwhile, another

4

accomplice slammed a register to the floor, and when it broke open, the three accomplices reached down and put money into their pockets. The men then left the store.

Minutes later, several blocks from the store, four men approached J.A. as he exited his car. One of the men held a gun to J.A.'s face and demanded the car keys. J.A. complied. Surveillance video showed the four men abandoning the car on a street in Newark, a few miles north of the mini-mart.

Sergeant Carlos Olmo of the Essex County Prosecutor's Office Homicide Task Force testified that he extracted still photographs from the video, and released them to the public for help in identifying the suspects. L.C. saw the photographs on television, and the next morning called the police, claiming that she knew the identities of the robbers. At the station, she identified the gunman as her cousin, Ivery Brinson, and the accomplices as her cousins Deion and Shakil Brinson, and her brother, Carnel Colbert. L.C. also identified defendant's voice from the audio portion of the surveillance footage. During her testimony at trial, L.C. identified defendant for the jury, and watched the video in front of the jury, using a laser pointer to identify each of the suspects. L.C. also watched surveillance video from the Newark Housing Authority, where defendants exited and abandoned the carjacked

video – she testified, while watching the video, that it was defendant and co-defendants exiting the vehicle.

Along with L.C., co-defendant Carnel's other sister, S.C., also testified on behalf of the State. She saw the footage of the robbery on the internet, and made the same identifications as L.C. at the Essex County Prosecutor's Office. Her testimony at trial provided the same identifications that L.C. provided in her testimony.

J.A., the carjacking victim, also testified on behalf of the State. J.A. made an in-court identification of defendant as the man who held the gun to his head during the carjacking. Previously, J.A. picked defendant out of a double-blind photo array – this was videotaped and shown to the jury.

## II.

In each of defendant's points on appeal, he concedes that none of the arguments were raised before the trial judge. Arguments not raised in the trial court are reviewed for plain error. R. 2:10-2. Such an error must be "sufficient to raise a reasonable doubt as to whether the error led the jury to a result it otherwise might not have reached." State v. Chavies, 345 N.J. Super. 254, 265 (App. Div. 2001) (quoting State v. Macon, 57 N.J. 325, 336 (1971)). "Appellate courts ordinarily decline to consider issues not presented to the trial court unless they 'go to the jurisdiction of the trial court or concern matters of great public

interest.'" Kvaerner Process, Inc. v. Barham-McBride Joint Venture, 368 N.J. Super. 190, 196 (App. Div. 2004) (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973)); see also U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 483 (2012) (declining to consider argument raised for the first time on appeal).

### III.

We first address defendant's argument that the jury should have been instructed on the elements of attempted robbery, claiming, "[A]lthough the court instructed the jury that attempted theft could serve as the basis for a robbery conviction, it did not read the model charge of attempt, as the model charge on robbery requires." Defendant claims this alleged error requires reversal of the felony murder, robbery, and conspiracy to commit robbery convictions. However, quoting State v. Dehart, 430 N.J. Super. 108, 118 (App. Div. 2013), defendant concedes that the model charge defining attempt is required "[i]f an attempt is involved."

Defendant premises this argument on the fact there was no evidence admitted into trial of actual items taken from the store during the incident. In Dehart, the defendant approached the register holding a candy bar. Id. at 111. He then produced a metal stick, threatened the owner, and told her to open the register, but she instead ran out of the store, and the defendant followed. Ibid. This court held that it was

A-2124-17T4

plain error by the trial court in failing to instruct the jury on attempt, where "[t]here was no competent evidence [the] defendant took anything," id. at 120, as no money was taken, and there was no proof that the defendant took the candy bar from the store.

Here, however, there were multiple instances in the surveillance video where all four suspects clearly placed store items into their pockets after Patel was shot. Defendant and a co-defendant first went behind the counter and put various items into their pockets. When defendant hopped over the counter, he stopped and placed items into his pockets. Finally, a co-defendant took a register, broke it open, and he and the other two co-defendants began taking items from the broken register, and placed the items into their pockets. We disagree with defendant's assertion that "there was essentially no evidence of an actual theft," as the jury saw these surveillance tapes at trial. There is no reasonable doubt that a different result would have occurred if the jury received an attempt instruction as to the robbery charge. Defendant's first point clearly lacks merit.

IV.

Next, we address defendant's argument the jury produced an inconsistent verdict sheet, as it marked defendant guilty of aggravated manslaughter and not guilty of reckless manslaughter, which defendant contends is an indispensable

component of aggravated manslaughter. Once the jury marked defendant guilty of aggravated manslaughter, the directions on the verdict sheet instructed them to skip the next question about reckless manslaughter, but the jury instead answered that question. Defendant argues the reckless manslaughter verdict precludes his conviction for aggravated manslaughter. We disagree.

The same error was made by the juries in State v. Myers, 239 N.J. Super. 158, 170 (App. Div. 1990) and State v. Compton, 304 N.J. Super. 477, 488 (App. Div. 1997). However, in Myers, "[T]he jury was not told whether or not to continue voting if it found defendant guilty of aggravated manslaughter. It was also not told what was the result if it found defendant guilty of more than one charge." 239 N.J. Super. at 170. We held:

> An alert but uninformed jury could well have thought that it was to convict, if at all, of only one of the charges so that defendant would not be exposed to multiple penalties. That may seem silly to persons with criminal courtroom experience, but piling on guilty verdicts of lesser included or related charges may seem just as silly to sensible but inexperienced lay jurors. An instruction in this regard could prevent such confusion in the future.
>
> [Id. at 170-71.]

In <u>Compton</u>, this court did not mention whether there was an instruction for the jurors to skip questions upon finding the defendant guilty of a certain degree of homicide.  However, the court was adamant there was no error, stating:

> Defendant argues that an inherent inconsistency between the jury's verdicts of not guilty with respect to reckless manslaughter and guilty with respect to aggravated manslaughter invalidated the verdict.  That argument is entirely without merit.  <u>R.</u> 2:11-3(e)(2).  The trial judge was correct to conclude that the jury verdict was entitled to deference because there had been sufficient evidence to prove each and every element of aggravated manslaughter beyond a reasonable doubt.  <u>State v. Kluber</u>, 130 N.J. Super. 336, 341-42 (App. Div. 1974).
>
> [<u>Compton</u>, 304 N.J. Super. at 488.]

Here, defendant argued at summation, and concedes on appeal, that this was a case of identification – whether defendant was the individual in the surveillance tape that shot Patel and robbed the mini mart.  The jury unequivocally found that he was, as it found defendant guilty of felony murder, robbery, carjacking, possession of a weapon, and multiple conspiracy charges, along with aggravated manslaughter.  Moreover, as stated in <u>Compton</u>, there was sufficient evidence to prove the elements of aggravated manslaughter beyond a reasonable doubt.  N.J.S.A. 2C:11-4(a)(1).  Thus, there is no reasonable doubt that a different result would have occurred if the jury had not

erred in answering the reckless manslaughter question. Defendant's second point clearly lacks merit.

## V.

Next, defendant argues that the trial judge incorrectly identified defendant's unlawful purpose for possessing the gun, during his charge to the jury. In State v. Diaz, 144 N.J. 628, 635 (1996), the Court explained the necessary elements of possession of a firearm for an unlawful purpose, N.J.S.A. 2C:39-4(a):

> (1) the object possessed was a "firearm" within the meaning of N.J.S.A. 2C:39-1(f); (2) the firearm was possessed by defendant as defined in N.J.S.A. 2C:2-1(c); (3) the defendant's purpose in possessing the firearm was to use it against the person or property of another; and (4) the defendant intended to use the firearm in a manner that was unlawful.
>
> [(Citation omitted).]

"In the majority of cases, the charge of possession of a firearm for an unlawful purpose 'is coupled with a charge of an act accomplished with the gun – a robbery, an assault, a homicide – which the court tells the jury is unlawful.'" Id. at 636 (quoting State v. Jenkins, 234 N.J. Super. 311, 315 (App. Div. 1989)).

Regarding the fourth element of the offense, the judge told the jurors:

> The fourth element that the State must prove beyond a reasonable doubt is that the defendant had a purpose to use the firearm in a manner that was prohibited by law. I [have] already defined purpose for you. This element

11

requires that you find that the State has proven beyond a reasonable doubt that . . . defendant possessed a firearm with the conscious objective design or specific intent to use it against the person or property of another in an unlawful manner as charged in the [i]ndictment and not for some other purpose.

In this case the State contends that . . . defendant's unlawful purpose in possessing the firearm was to use it unlawfully against Narendrak Patel. You must not rely upon your own notions of the unlawfulness of some other undescribed purpose of the defendant. Rather you must consider whether the State has proven the specific unlawful purpose charge. The unlawful purpose alleged by the State may be inferred from all that was said or done, and from all the surrounding circumstances of this case. However[,] the State need not prove that defendant accomplished his unlawful purpose of using the firearm.

[(Emphasis added).]

"The trial court's obligation is to identify the unlawful purpose(s) that may be suggested by the evidence." State v. Williams, 168 N.J. 323, 341 (2001). In Williams, the Court deemed the following instruction to be plain error:

The mental element of purpose to use a firearm unlawfully requires that you find that the [d]efendant possessed the firearm with the conscious objective, design, or specific intent to use it against the person or property of another in an unlawful manner, as charged in the [i]ndictment, and not for some other purpose.

In this case, the State contends that the [d]efendant's unlawful purpose in possessing the firearm was to use it unlawfully against the person of [the victim].

[Id. at 336 (emphasis added).]

However, it was the defendant's assertion he used the weapon in self-defense, coupled with the lack of specificity regarding an alleged unlawful purpose, that compelled the Court's reversal. Id. at 337-38. The failure to more specifically define the "unlawful purpose," "had the clear capacity to mislead the jury." Id. at 339.

In Jenkins, 234 N.J. Super. at 315, the defendant was acquitted of aggravated assault, after allegedly shooting at his wife. We reversed the defendant's conviction of possession of a firearm for an unlawful purpose, reasoning that the jury had not been instructed on the specific unlawful purpose suggested by the evidence, and the instruction failed to inform the jury that it could not convict based on its own notions of unlawfulness or an undescribed purpose. Id. at 316.

Here, however, despite the judge's failure to specifically enumerate the unlawful purposes charged in the indictment, i.e., felony murder, robbery, and carjacking, there is no evidence of confusion or speculation by the jury. It convicted defendant of all those underlying offenses and, as noted, the essential defense was not that defendant possessed the firearm for a lawful purpose, but rather that defendant was not involved at all and was not present.

While it would have been preferable for the judge to specifically state the specific unlawful purposes alleged, that failure, under the circumstances of this particular case, did not constitute plain error.

VI.

Finally, defendant claims he should not have received concurrent sentences for the felony murder and carjacking convictions. We find no clear abuse of discretion or other error in the sentence. State v. Bolvito, 217 N.J. 221, 228 (2014).

"When multiple sentences of imprisonment are imposed on a defendant for more than one offense, . . . such multiple sentences shall run concurrently or consecutively as the court determines at the time of sentence . . . ." N.J.S.A. 2C:44-5(a). "[I]n fashioning consecutive or concurrent sentences under the Code, sentencing courts should be guided by the Code's paramount sentencing goals that punishment fit the crime, not the criminal, and that there be a predictable degree of uniformity in sentencing." State v. Friedman, 209 N.J. 102, 122 (2012) (quoting State v. Yarbough, 100 N.J. 627, 630 (1985)). In Yarbough, our Supreme Court outlined standards to guide the court's discretion in deciding whether to impose consecutive or concurrent sentences for separate offenses: (1) whether "the crimes and their objectives were predominantly independent of each other"; (2) whether

they "involved separate acts of violence or threats of violence"; (3) whether they "were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior"; (4) whether they "involved multiple victims"; and (5) whether "the convictions for which the sentences are to be imposed are numerous." 100 N.J. at 643-44.

Trial judges have discretion whether to impose concurrent or consecutive sentences for two or more crimes. N.J.S.A. 2C:44-5; Yarbough, 100 N.J. at 643-44; see also State v. Abdullah, 184 N.J. 497, 512-15 (2005) (upholding constitutionality of N.J.S.A. 2C:44-5, which permits imposition of consecutive sentences based on judicial factfinding). "Consecutive sentences are not an abuse of discretion when separate crimes involve separate victims, separate acts of violence, or occur at separate times." State v. Copling, 326 N.J. Super. 417, 441 (App. Div. 1999) (citing State v. Roach, 146 N.J. 208, 230 (1996)).

Here, the trial judge enunciated Yarbough as the leading case in determining whether to impose concurrent or consecutive terms through the consideration of the factors listed above. As to the felony murder and carjacking convictions, the judge stated the factors in order, and applied a factual analysis and conclusion to each. Ultimately, he found "the affirmative presence of all five" Yarbough factors, and

"that the factors supporting consecutive sentences clearly outweigh the factors supporting concurrent sentences." We agree.

As noted by the judge, "The crime against Mr. Patel was committed at [an address] in Irvington[, while] the crime against [J.A.] was committed several blocks away at [a different address] in Irvington." Clearly, the crimes were separate acts of violence or threats of violence, committed at different times and places, and against multiple victims, satisfying factors (2) through (4). The objective of the felony murder was to further execute the robbery at the store, while the objective of the carjacking was presumably to facilitate flight from the crime scene. Finally, the plethora of decisions and acts committed by defendant throughout the relevant period resulted in numerous convictions in this case. The trial court did not abuse its discretion in imposing the carjacking and felony murder terms consecutively.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2124-17T4