**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3631-16T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

STEVEN L. GANIEL, a/k/a
PIP E. EANIEL, STEVEN
L. EANIEL, NAZ GANIEL
and PUPPY GANIEL,

    Defendant-Appellant.

_____

> Submitted October 30, 2018 – Decided March 20, 2019
>
> Before Judges Rothstadt and Gilson.
>
> On appeal from Superior Court of New Jersey, Law Division, Atlantic County, Indictment No. 15-09-2350.
>
> Joseph E. Krakora, Public Defender, attorney for appellant (Stefan Van Jura, Deputy Public Defender II, of counsel and on the brief).
>
> Damon G. Tyner, Atlantic County Prosecutor, attorney for respondent (Dylan P. Thompson, Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Defendant Steven L. Ganiel appeals from the Law Division's judgment of conviction that was entered after a jury found him guilty of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7). After his conviction, the trial court sentenced defendant in the extended term to fifty-four months with a twenty-seven month period of parole ineligibility to be served consecutive to a term he was then serving on parole for a prior offense.

Defendant's conviction arose from a domestic violence incident involving his girlfriend, A.D., who reported to the local police that defendant had assaulted and injured her. In his statement to police, defendant did not deny injuring A.D., but contented that he did so during a physical altercation while acting in self-defense.

On appeal, defendant argues that various trial errors undermined his ability to establish his claim of self-defense. For example, he claims that while he never disputed causing some of A.D.'s injuries, the jury may have been misled into thinking he caused all of them because he was denied his constitutional right to confront his accuser at trial when a police officer was permitted to testify about A.D.'s allegations even though A.D. did not appear as a witness. He also contends that the trial court improperly allowed a police officer to offer expert testimony about A.D.'s injuries being caused by a weapon, which challenged his claim that he used

2

reasonable force in self-defense. In addition, he argues that he was denied his constitutional right to present a complete defense because he was not permitted to explore A.D.'s mental health history, which would have demonstrated many of her injuries were self-inflicted. According to defendant, the cumulative impact of all of the trial court's errors denied him a fair trial. In his challenge to his sentence, defendant argues that his sentence is illegal because the trial court imposed a consecutive term to a violation of his parole that had not yet occurred. For the reasons that follow, we affirm.

I.

The facts established in the record are summarized as follows. On July 12, 2015, Egg Harbor Township Police Officer Jennifer Hurley responded to a domestic violence call from A.D. who reported that defendant had been physically abusing her since July 10, 2015. When the police responded to defendant and A.D.'s residence, A.D. was present but defendant had left the apartment to go to the laundromat. Some of A.D's injuries, including bruises to both of her eyes, were immediately apparent to the responding officers. Hurley asked A.D. to remove her top layer of clothing and observed that A.D. had additional bruises up and down her arms as well as cuts on her left arm. When questioned, A.D. admitted that the cuts were self-inflicted. She explained that despite defendant continuously physically

abusing her over the past two days, she did not seek a restraining order against him and that he was on parole.

The police transported A.D. to a regional medical center. A.D. advised a treating nurse that in addition to being physically abused, defendant had sexually assaulted her. A.D. requested that a sexual assault kit be completed but afterwards she clarified that she was not raped, but defendant had been aggressive during consensual sex. The attending medical staff sent A.D. for a CT scan because she claimed that defendant banged her head on the floor and kicked her in the chest. Also, during her medical assessment, A.D. stated that she wanted to end her life. She also told the nurse that she had severe depression and was dependent on medication, but because defendant removed the medicine from their home, she had not taken it for several days.

While A.D. was being attended to at the medical center, Officer David Aldridge went to the laundromat to apprehend defendant. At the police station, defendant was advised of his Miranda[1] rights and then interviewed. When questioned about the events of July 10, 2015, he explained that he and A.D. had an argument and that A.D. was drinking and assaulted him with an X-Acto knife, stabbing him in the left hand. He said that he grabbed her by the wrists and hit her

---

[1] Miranda v. Arizona, 384 U.S. 463 (1966).

on the right side of the face with an open hand. A.D. told him that she was going to "Lorena Bobbitt" him and then grabbed his genitals along with another knife. Defendant stated that he grabbed her to avoid getting stabbed and hit her on the left side of her face with an open hand, ultimately placing her in a bear hug and throwing her to the ground in self-defense. He said that he left the apartment to get away from her.

Defendant stated he returned to the residence a few hours later and went to sleep, until A.D. began to beat him with a phone. Defendant again left the home, but later returned after he spoke with A.D. and she begged him to come back. At home, he and A.D. had sex and went to sleep. Upon waking, defendant went to the laundromat to do laundry, which was why he was not in the apartment when the police arrived. Defendant also reported that alcohol and A.D.'s mental illness were the most significant contributing factors to the incidents.

On September 30, 2015, a grand jury returned an indictment charging defendant with one count of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(7). Defendant's ensuing trial took place over three days in October 2016.

After initially conducting a pre-trial Rule 104 hearing, the trial court denied the State's application to admit the tape of A.D.'s 911 call as an a statement of "present sense impression," under Rule 803(c)(1), or an "excited utterance," under Rule

803(c)(2). It granted the State's motion to prevent defendant from offering evidence relating to A.D.'s "mental stability as there[ was] no doctor on the witness list to testify to any type of limitation [A.D.] may have." However, the court stated that it would allow cross-examination about A.D.'s mental condition and her medications to determine their impact on her ability "to answer and understand questions and her state of mind then and now . . . ."

The court also denied defendant's application to admit an affidavit from A.D., attesting to her self-harm and easy bruising.[2] The court found that the affidavit "ha[d] all the earmarks of deliberation and fabrication, where the declarant has apparently made excuses or explanations of self-mutilation, self-abuse and easily bruised based on medication, all of those appear to be facile explanations for what may be very simply a domestic event resulting in her injury." It ruled that if A.D. took "the stand, . . . she c[ould] be confronted with her statements made to the 911 dispatcher and the jury may take from that what it may choose to . . . ."

At the end of the hearing, the parties advised the court that despite their efforts to subpoena A.D. to testify, she would not appear for trial. The trial court issued an order for A.D.'s arrest so that she could be compelled to appear. Despite that order, A.D. did not testify at the trial.

---

[2] We have not been supplied with a copy of the affidavit.

A-3631-16T4

At trial, Hurley and Aldridge testified for the State about the events that led to defendant's arrest and the charge made against him. During Aldridge's testimony, the State played the audio tape of his interview of defendant, in which defendant explained how he acted in self-defense and, in doing so, caused injuries to A.D. The State also called Lieutenant Dylan Hutton who explained he obtained consent from defendant to go back to the apartment to locate the weapon allegedly used by A.D. against him. During his conversation with defendant, Hutton did not observe any facial or neck injuries sustained by defendant, but did notice injuries to his hand, though they did not look fresh.

The State's final witness was Dr. Eva Guerrieri, the attending physician in the emergency room who examined A.D. on July 12, 2015. Before she testified, the trial court granted the State's motion to bar defendant from cross-examining Guerrieri about A.D.'s "psychiatric issues." In granting the motion, the trial court stated it would not allow questions "relative to any diagnosis of mental health," but it would allow cross-examination about the doctor's knowledge of what medications A.D. was taking and whether they impacted A.D.'s ability to "understand the course of treatment" she was receiving or "why she was there."

During her testimony, Guerrieri testified that she ordered a CT scan since it looked like A.D. was struck in the face with force. She also had bruising over her

legs, chest, and arms as well as "superficial scratches." She asked A.D. how she obtained the injuries and was told that defendant had caused them over the course of three days except for "the older healed injuries, the cuts and bruises," which A.D. "revealed" were caused by her cutting herself in the past. Guerrieri also testified that she ran blood and urine tests, which showed that A.D. had alcohol, benzodiazepine,[3] opiates, and marijuana in her system. When defense counsel attempted to cross-examine Guerrieri and establish a connection between A.D.'s mental health and her injuries, the trial court barred the examination as beyond the scope of the State's direct, but it allowed defense counsel to question her about whether any of A.D.'s injuries were self-inflicted.

Defendant did not testify but called R.M., A.D.'s mother, as a witness. She testified that she saw A.D. on July 9, 2015, and that A.D. had bruising around her eyes. She also stated that she only saw whatever injuries were present in text message photos that A.D. sent her after July 12, 2015, and that A.D. "always had bruising on her arms and part of her legs," which was the result of A.D. being clumsy.

Following deliberations, the jury found defendant guilty of the one count of aggravated assault as charged in the indictment. On February 24, 2017, the trial

---

[3] A.D. indicated that she had been prescribed Xanax on her list of medications.

court sentenced defendant. In imposing a sentence consecutive to the one he was serving on parole, the court stated it did so because "[t]his offense occurred in a separate place and time and was not in any way connected with the gravamen of the offenses for which defendant is presently serving parole." This appeal followed.

## II.

On appeal, defendant specifically argues the following points:

POINT I

DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHT TO CONFRONT HIS ACCUSER BY THE INVESTIGATING OFFICER'S HEARSAY REPETITION OF THE VICTIM'S ACCUSATION. (NOT RAISED BELOW).

POINT II

DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO DUE PROCESS AND A FAIR TRIAL BY THE INTRODUCTION OF EXPERT TESTIMONY THROUGH A LAY WITNESS WHO OPINED THAT THE VICTIM'S INJURIES WERE CAUSED BY A WEAPON. (NOT RAISED BELOW).

POINT III

DEFENDANT WAS DENIED HIS CONSTITUTIONAL RIGHTS TO PRESENT A COMPLETE DEFENSE BY THE TRIAL COURT'S RULING THAT LIMITED HIS ABILITY TO EXPLORE THE VICTIM'S MENTAL HEALTH, WHICH WOULD HAVE DEMONSTRATED THAT

MANY OF HER INJURIES WERE SELF-INFLICTED, LENDING CREDENCE TO THE ONLY PROFFERED DEFENSE; SELF-DEFENSE.

POINT IV

THE CUMULATIVE IMPACT OF THE TRIAL ERRORS DENIED DEFENDANT DUE PROCESS AND A FAIR TRIAL. (NOT RAISED BELOW).

POINT V

THE TRIAL JUDGE IMPOSED AN ILLEGAL SENTENCE WHEN HE IMPOSED A CUSTODIAL TERM THAT WAS MADE TO RUN CONSECUTIVELY TO A SENTENCE FOR A VIOLATION OF MANDATORY PAROLE SUPERVISION THAT HAD NOT YET BEEN IMPOSED. (NOT RAISED BELOW).

As noted, defendant failed to raise with the trial court three of his four contentions challenging his conviction. Accordingly, we review those issues for plain error, which requires us to "disregard any unchallenged errors or omissions unless they are 'clearly capable of producing an unjust result.'" State v. Santamaria, __ N.J. __, __ (2019) (slip op. at 13) (quoting R. 2:10-2). Regarding defendant's contention in Point I, where his challenge implicates constitutional questions under the Confrontation Clause, "the appropriate plain error analysis . . . address[es] whether any constitutional error was harmless beyond a reasonable doubt." State v. Basil, 202 N.J. 570, 615 n.5 (2010) (Rabner, C.J.,

concurring in part and dissenting in part) (citations omitted); see also State ex rel. J.A., 195 N.J. 324, 351 (2008); State v. Castagna, 187 N.J. 293, 312 (2006) (quoting Chapman v. California, 386 U.S. 18 (1967)).

As to the remaining argument directed toward his conviction, we apply the harmless error standard. Under that standard, "even though an alleged error was brought to the trial judge's attention, it will not be grounds for reversal if it was 'harmless error[,]'" which is "[a]n error . . . [that is not] 'clearly capable of producing an unjust result.'" State v. J.R., 227 N.J. 393, 417 (2017) (first quoting State v. Macon, 57 N.J. 325, 337-38 (1971); and then quoting R. 2:10-2). "An evidentiary error will not be found 'harmless' if there is a reasonable doubt as to whether the error contributed to the verdict." Ibid. "The prospect that the error gave rise to an unjust result 'must be real [and] sufficient to raise a reasonable doubt as to whether [it] led the jury to a verdict it otherwise might not have reached.'" Ibid. (alterations in original) (quoting State v. Lazo, 209 N.J. 9, 26 (2012)).

As to defendant's challenge to his sentence, "[w]e apply a deferential standard of review to the sentencing court's determination, but not to [its] interpretation of a law." State v. Bolvito, 217 N.J. 221, 228 (2014). Our "review of sentencing decisions is relatively narrow and is governed by an abuse of

11

discretion standard." State v. Blackmon, 202 N.J. 283, 297 (2010). In our review, we may not "substitute [our] judgment for those of our sentencing courts." State v. Case, 220 N.J. 49, 65 (2014). We must, however, ensure that the trial court followed the appropriate sentencing guidelines. We determine whether the trial court: (1) exercised discretion that "was based upon findings of fact grounded in competent, reasonably credible evidence"; (2) "applied the correct legal principles in exercising its discretion"; and (3) applied the facts to the law in a manner that demonstrates "such a clear error of [judgment] that it shocks the conscience." State v. McDuffie, 450 N.J. Super. 554, 576 (App. Div. 2017) (quoting State v. Megargel, 143 N.J. 484, 493 (1996)).

### III.

With these guiding principles in mind, we turn our attention first to defendant's contention under Point I that his constitutional right to confront A.D. was violated by the trial court allowing Hurley's unimpeachable hearsay testimony that A.D. told her defendant caused A.D.'s injuries. Testimony concerning what A.D. said about her injuries arose for the first time during defense counsel's cross-examination of Hurley when he asked the officer "[b]esides the physical injuries, did the victim indicate any other unlawful behavior by . . . defendant?" In response, Hurley stated that "[b]esides the

12

physical," a nurse told Hurley that A.D. stated that she had been sexually assaulted. The testimony being challenged by defendant on appeal came during re-direct when Hurley stated that A.D. indicated to her that the bruises she saw were caused by defendant.

Defendant contends that because A.D. did not testify, "he could not probe which injuries were self-inflicted and which were caused [in] the reasonable application of defendant's defense of himself." He argues that despite his failure to object, Hurley's testimony on re-direct should have been barred under the Confrontation Clauses contained in both the Sixth Amendment of the Federal Constitution and Article One, Section Ten of our State Constitution because they prohibit testimony at trial about out-of-court testimonial statements by a person who does not testify at trial, unless that person is unavailable and the defendant had a prior opportunity to cross-examine him or her.

Defendant argues that any statements made by A.D. in response to Hurley's questioning should be considered testimonial since the primary purpose was to investigate a possible crime and not to address an ongoing emergency. He also argues that the statement was prejudicial because he "could not probe [A.D.]'s veracity" as to which injuries were self-inflicted and which he caused while defending himself. As such, defendant maintains that the error

13

contributed to the conviction and that he met the heavier plain error burden since the inability to confront A.D. "unfairly undercut his only defense." We disagree.

It is beyond cavil that the Sixth Amendment's Confrontation Clause, which applies to the states by way of the Fourteenth Amendment, guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. It bars the admission of "'[t]estimonial statements of witnesses absent from trial' except 'where the declarant is unavailable, and only where the defendant had a prior opportunity to cross-examine'" that witness. State v. Dehart, 430 N.J. Super. 108, 114 (App. Div. 2013) (quoting Crawford v. Washington, 541 U.S. 36, 59 (2004)). For that reason, when a testifying police officer repeats "what some other person told him concerning the crime by the accused the testimony violates the hearsay rule . . . [and] the accused's Sixth Amendment right to be confronted by witnesses against him." State v. Bankston, 63 N.J. 263, 268-69 (1973). The testimony is objectionable when it includes details that "leads the jury to believe a non-testifying witness has given the police evidence of the accused's guilt," which the jury does not already have. Id. at 271.

We conclude that to the extent that Hurley's description of what A.D. told her about defendant causing her injuries was admitted in error, it was not plain

error as there was other evidence that defendant caused at least some of the injuries. That evidence came directly from defendant in his interview with police, which was played for the jury and in which he admitted to striking A.D. and causing the injuries to her head and face, albeit in self-defense, as compared to the evidence of cutting on her arms that was undisputedly self-inflicted. There was therefore never a dispute that defendant injured A.D. during their physical altercation. Under these circumstances, there was no plain error warranting a reversal.

IV.

We next address defendant's argument in Point II that the trial court improperly allowed Hurley to offer expert testimony about defendant's use of a weapon. The challenged testimony arose during the following exchange between the prosecutor and Hurley during redirect examination:

> Q: Taking a look at the State's exhibits again, the photos that you took, to the best of your training and experience, could you tell the jury do the injuries appear to be inflicted by a weapon or something else?
>
> A: I'm not sure how I would determine if it was a weapon or not because hands can be used as a weapon, so I guess, yes, a weapon of some sort. There are cuts that are in a straight line, so one would assume that it would be a cutting instrument of some kind.
>
> Q: How about the bruising?

A: Some of them are round, which could possibly be a blunt object, some of them look like a hand print. I can't, I'm not an expert on bruises, but I would just, you know, assume that some type of weapon caused the injuries to her.

According to defendant, although Hurley admitted to not being an expert, her expert testimony struck a "severe, unfair blow to his claim of self-defense" and even though he did not object to the testimony, his conviction should be reversed because the error "was clearly capable" of undermining his only defense. Defendant maintains that Hurley's testimony contradicted his statement to the police about striking A.D. with his hands and made it "practically certain to disbelieve that he used reasonable force" while defending himself if the jury believed Hurley's testimony that he used a weapon.

Defendant also argues that Hurley's testimony went beyond permissible lay testimony under Rule 701 and amounted to impermissible expert testimony under Rule 702 because the jury was not capable of determining whether a weapon was used without relying on expert testimony by a witness with specialized knowledge of the subject. Again, we disagree.

Contrary to defendant's contention, it is clear from Hurley's testimony that she did not testify as an expert and only provided her lay opinion in response to the prosecutor's question. Expert opinion testimony is allowed under Rule 702,

16

only "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, [and the] witness [is] qualified as an expert by knowledge, skill, experience, training, or education . . . ." N.J.R.E. 702. To satisfy Rule 702, the proponent of the expert evidence must establish: "(1) the subject matter of the testimony . . . [is] 'beyond the ken of the average juror'; (2) the field of inquiry 'must be . . . such that an expert's testimony could be sufficiently reliable'; and (3) 'the witness must have sufficient expertise to offer the' testimony." State v. J.L.G., 234 N.J. 265, 280 (2018) (quoting State v. Kelly, 97 N.J. 178, 208 (1984)).

Lay opinion testimony is permitted under Rule 701 "[i]f a witness is not testifying as an expert[ and] the witness's testimony in the form of opinions or inferences . . . (a) is rationally based on the perception of the witness and (b) will assist in understanding the witness'[s] testimony or in determining a fact in issue." N.J.R.E. 701. "The witness's perception must 'rest[] on the acquisition of knowledge through use of one's sense of touch, taste, sight, smell or hearing.'" State v. Hyman, 451 N.J. Super. 429, 442 (App. Div. 2017) (alteration in original) (quoting State v. McLean, 205 N.J. 438, 457 (2011)).

Police officers are permitted to testify as lay witnesses when opining based on personal observations and experience. State v. LaBrutto, 114 N.J. 187, 198 (1989). The Court has observed that

> [a]lthough . . ., in explaining such lay opinion testimony, [we have] referred . . . to the officer's training and experience, . . . the analysis of admissibility has been, as it must be, firmly rooted in the personal observations and perceptions of the lay witness in the traditional meaning of Rule 701.
>
> [McLean, 205 N.J. at 459.]

However, "reference in [a] question to [the officer's] training and experience, coupled with the request that [the officer] testify about his [or her] belief as to what had happened, impermissibly ask[s] for an expert opinion from a witness who had not been qualified to give one." Id. at 462. Whether a police officer's opinion testimony is offered as lay or expert, it "is not a vehicle for offering the view of the witness about a series of facts that the jury can evaluate for itself or an opportunity to express a view on guilt or innocence." Ibid.

Here, we conclude that the prosecutor asked Hurley for impermissible expert opinion testimony, see id. at 463, but Hurley answered by providing only lay opinion about whether a "weapon" was used in the altercation between defendant and A.D. That testimony could only be provided by an expert as "it [was] . . . outside the ken of average jurors," so the admission of Hurley's

opinion was an error, but under the circumstances presented here, the error was harmless.  Id. at 462.

The challenged testimony only corroborated defendant's statements in his interview, which his attorney relied upon in summation.  Defendant admitted to striking A.D. with his hand and Hurley only opined that to the extent a hand could be considered a weapon, a "weapon of some sort was used" and that she had no specialized skill or training to determine if anything else was used to cause A.D.'s injuries that were depicted in the photographs presented to her. There was no plain error.

V.

We turn our attention next to defendant's argument in Point III that he should have been allowed to admit probative evidence to demonstrate that A.D.'s mental illness caused her to behave in a way that justified his defending himself and that not all of her injuries were caused by him.  As noted earlier, at trial, defendant unsuccessfully attempted to admit A.D.'s affidavit that attested to her history of self-harm and schizophrenia and his counsel tried to cross-examine Guerrieri about the connection between A.D.'s prescription drug-use and her infliction of injuries to herself.  He argues that the trial court abused its discretion by preventing him from connecting A.D.'s mental health to her

injuries, particularly in light of testimony from her mother. We find no merit to this argument.

First, the trial court properly barred the proffered affidavit from admission because it was hearsay under Rule 803(c) and therefore not admissible under Rule 802. Moreover, because the statement was not made by A.D. within a short time of her conduct as alleged by defendant, it was not admissible under Rule 803(c)(3) ("[t]hen existing mental, emotional or physical condition") and it could not be admitted under Rule 803(c)(4) ("[s]tatement[] for purposes of medical diagnoses or treatment") because it was not one given to a medical professional for determining a diagnosis or treatment. See State v. Williams, 106 N.J. Super. 170 (App. Div. 1969).

Second, Guerrieri's testimony about A.D.'s statement to her about A.D.'s mental health issues and use of medications did not open the door to allow defendant to further examine the doctor about A.D.'s problems. Guerrieri specifically testified that she was not concerned with A.D.'s past mental health history but only about treating the physical injuries and she did not ask A.D. if she was responsible for her own injuries. For that reason, testimony by Guerrieri about A.D.'s use of psychiatric medications or her self-inflicted injuries that were based upon A.D.'s statements would also have been inadmissible hearsay

not subject to admission under Rule 803(c)(4) because the statements made to the doctor were not "reasonably pertinent to [her] diagnosis or treatment" of A.D. N.J.R.E. 803(c)(4).

Finally, even if there was some basis to admit either the affidavit or to allow further examination of Guerrieri by defense counsel, the trial court's decision to bar their admission was harmless. A.D.'s mental health issues and her use of medications, as well as her history of inflicting wounds to herself were established at trial through defendant's statement to police, A.D.'s mother's testimony, and portions of Guerrieri's testimony that were presented to the jury. Under these facts, we conclude that the error, if any, did not create a reasonable doubt that the error gave rise to an unjust result.

## VI.

Defendant's remaining challenge to his conviction relies upon his claim that the cumulative effect of the various legal errors he identified requires that we order a new trial. However, because we find that there were no prejudicial errors made by the trial court and defendant's "'trial was fair,'" State v. Rivera, 437 N.J. Super. 434, 444 (App. Div. 2014) (quoting State v. Weaver, 219 N.J. 131, 155 (2014)), we conclude his claim of cumulative merit is without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

## VII.

Finally, we address defendant's contention that his sentence was illegal. Defendant's argument is premised upon his understanding that the trial court sentenced him to a term of imprisonment that was to be consecutive to a violation of parole for which he had yet to be convicted. Defendant's understanding, however, is incorrect.

Contrary to defendant's understanding, the trial court specifically noted that defendant's sentence was being imposed consecutive to his sentence for the crime he was currently on parole and his judgment of conviction confirmed that fact. The court's ruling was consistent with the statutory presumption that "[w]here [a] second crime [is] committed while [a] defendant was released on . . . parole, there is a presumption that the sentence is consecutive if the sentence does not specify otherwise . . . ." Cannel, New Jersey Criminal Code Annotated, comment 7 on N.J.S.A. 2C:44-5 (2018); see also N.J.S.A. 2C:44-5(c) (requiring that, unless otherwise ordered by the court, a sentence for a crime committed while on parole shall be consecutive to "any period of reimprisonment that the parole board may require . . . upon the revocation of his parole"). Accordingly, there was no abuse of the trial court's discretion in sentencing defendant as his sentence was not illegal because defendant had to

complete his sentence on his first offense for however long the parole board may decide before he began his sentence on the present offense.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION