**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5978-17T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

GREGORY M. BENTLEY, 2ND,

    Defendant-Appellant.

_____

Submitted May 14, 2020 – Decided July 23, 2020

Before Judges Alvarez and DeAlmeida.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Indictment No. 16-07-2057.

Joseph E. Krakora, Public Defender, attorney for appellant (Stephen William Kirsch, Designated Counsel, on the brief).

Theodore N. Stephens II, Acting Essex County Prosecutor, attorney for respondent (Matthew E. Hanley, Special Deputy Attorney General/Acting Assistant Prosecutor, of counsel and on the brief).

PER CURIAM

Tried by a jury, defendant Gregory Bentley was convicted of first-degree attempted murder, N.J.S.A. 2C:5-1 and 2C:11-3(a)(1) (count one); first-degree robbery, N.J.S.A. 2C:15-1 (as to Hassan King) (count two); a lesser-included second-degree robbery (Mashara Salaam), N.J.S.A. 2C:15-1(a)(2) and (b) (count five); second-degree conspiracy to commit aggravated assault, N.J.S.A. 2C:5-2 and N.J.S.A. 2C:12:-1(b)(2) (count three); second-degree aggravated assault, N.J.S.A. 2C:12-1(b)(1) (count four); second-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b) (count seven); and second-degree burglary, N.J.S.A. 2C:18-2 (count nine).[1] The trial judge merged the second-degree conspiracy to commit aggravated assault and the second-degree aggravated assault into the first-degree attempted murder, and sentenced defendant to eighteen years imprisonment subject to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. The judge imposed an eight-year consecutive term for the crime against the second victim, second-degree robbery—also subject to NERA. She sentenced defendant to eight years each on second-degree unlawful possession of a weapon and second-degree burglary, and eighteen years on first-

---

[1] The jury acquitted defendant of third-degree aggravated assault, N.J.S.A. 2C:12-1(b)(2) (count six); and second-degree possession of a weapon for unlawful purpose, N.J.S.A. 2C:39-4(a) (count eight).

A-5978-17T4

degree robbery, all concurrent to the attempted murder. Thus, defendant's sentence was an aggregate of twenty-six years imprisonment.

The incident was captured on video. Hassan King was working at a convenience store at approximately 7:40 p.m. on January 18, 2016. He was accompanied by a friend, Mashara Salaam. Four men walked into the front room, separated by a plexiglass shield from a second room, and a third back room. King recognized two of the group, one of whom was defendant, the other a person he knew as Rashae. Rashae reached his hand through the plexiglass and shot at King and Salaam. King retrieved a gun from the rear and fired back. The men initially left, as did Salaam, who fled and was apparently never located. The prosecution offered no explanation for his whereabouts during the trial.

The assailants returned and continued shooting at King. He called 911, and the recording was played during the trial. King and defendant are heard on the call:

> [King]: Shooting. Shooting. They're try to rob. (Indiscernible) police, yo. They're trying to rob me, yo. You hear me? All right. Let's go. Back the fuck up. Don't do it. There they go.
>
> (Gunshots heard)
>
> . . . .

[King]: There they –

(Gunshots heard)

[King]: I'm (indiscernible).

[Defendant]: Where the money at?

[King]: (Indiscernible).

[Defendant]: Where's it at?

[King]: Right there.

[Defendant]: Where?

[King]: It's all up there.

[Defendant]: Where?

[King]: Over –

    . . . .

[King]: -- the counter.  It's in the counter.

[Defendant]: Where at?  Where?

[King]: In the counter.

[Defendant]: Where?

[King]: In the counter.  The counter.  I'm dying, bro.  I got (indiscernible).

    . . . .

[King]: I can't.  I can't move.  I'm laid up.  I'm hit.  Please, God.

Unidentified speaker: Where's the money?

[King]: It's on the counter.

[Defendant]: Yeah, where?  Over there?  In here?  In here?

. . . .

[King]: The counter up front.  Up front.  The left.  (Indiscernible).  I'm dying.  Please God.  Please.

Newark Police Department Detective Alton Faltz was dispatched to the scene, and found the store locked.  Only one light was on towards the rear.  Faltz banged on the windows, eventually seeing someone moving around the back who approached the front door.  That man was defendant.

Defendant walked towards the officer with his hands up, saying he was "the good guy."  Faltz kicked the door in, because defendant refused to open it.  He attempted to flee.  Faltz grabbed his arm, and walked him back into the store.  It was "foggy," and there were shell casings all over the floor where the victim lay in great pain.  Faltz took defendant to his patrol car and patted him down.  Three guns were found at the scene.  Although shot fifteen times, King survived and testified at the trial.  The jury heard defendant's recorded interview with police, during which he denied any involvement in the crime.

5

At the close of the State's case, defendant moved for a judgment of acquittal on the indictment count charging him with Salaam's robbery. The court denied the motion, finding there was "sufficient evidence from which the jurors may draw a reasonable inference that the theft was from both" King and Salaam. The judge based her decision on Salaam's presence near the plexiglass window when defendant and his companions first demanded money from the store employees.

Before the trial began, but after jury selection, the court read the indictment to the panel in accord with the model charges. See Model Jury Charge (Criminal), "Instructions After Jury Is Sworn" (rev. Oct. 15, 2012). The attempted murder count, however, incorrectly stated defendant's conduct was engaged in "purposely or knowingly." The judge read the indictment twice at the close of the trial.

During the closing charge, the trial judge read the attempted murder count for a third time. She immediately followed that reading with the model jury instruction, which states that in order for the jury to convict, it must find the State had proven beyond a reasonable doubt that defendant's "purpose [was] to cause the death of the victim." The judge defined the term "purposely." See Model Jury Charge (Criminal), "Attempted Murder" (approved Dec. 7, 1992).

While instructing the jury, the judge repeated that in order to find defendant guilty of attempted murder, the jury would have to conclude his purpose was to cause the death of the victim.

In the robbery instruction, the judge explained the State had to prove beyond a reasonable doubt that defendant acted in the course of committing a theft. She added: "that an act is considered to be in the course of committing a theft if it occurs in an attempt to commit a theft . . . ." Model Jury Charge (Criminal), "Robbery In The First Degree" (rev. Sept. 10, 2012). We discuss the judge's sentencing analysis in that portion of the decision.

On appeal, defendant raises the following points:

> POINT I
>
> THE JURY WAS INCORRECTLY TOLD THREE DIFFERENT TIMES THAT AN ATTEMPTED MURDER COULD BE COMMITTED WITH A PURPOSEFUL OR KNOWING STATE OF MIND AND WITH AN INTENT TO KILL OR CAUSE SERIOUS INJURY; BECAUSE THIS COURT HAS NO WAY OF KNOWING WHETHER THE JURY FOLLOWED THOSE INCORRECT INSTRUCTIONS OR THE CORRECT PORTION OF AN INSTRUCTION THAT LIMITED ATTEMPTED MURDER TO PURPOSEFUL ATTEMPTS TO KILL, THE CONVICTION FOR ATTEMPTED MURDER SHOULD BE REVERSED AND THAT COUNT REMANDED FOR RETRIAL; A DEFENDANT HAS A SIXTH AND FOURTEENTH AMENDMENT RIGHT TO ACTUAL JURY DELIBERATION AND

FINDINGS UNDER THE CORRECT LEGAL STANDARDS.

POINT II

AS WAS THE BASIS FOR REVERSAL IN STATE V. GONZALEZ AND STATE V. DEHART, THE TRIAL JUDGE CHARGED THE JURY ON ATTEMPTED THEFT AS A BASIS FOR ROBBERY, BUT DID NOT EVER PROPERLY DEFINE EITHER THE ACTUS REUS OR THE MENS REA ELEMENTS OF AN ATTEMPTED THEFT.

POINT III

IT WAS REVERSIBLE ERROR TO FAIL TO INSTRUCT THE JURY ON ACCOMPLICE LIABILITY IN A CASE WHERE DEFENDANT WAS CHARGED WITH BEING ONE OF FOUR MEN WHO ROBBED A STORE. THE JURY SHOULD NOT BE LEFT TO APPLY ITS OWN UNDERSTANDING OF ACCOMPLICE LIABILITY TO THE CASE.

POINT IV

THE MOTION FOR A JUDGMENT OF ACQUITTAL AT THE END OF THE STATE'S CASE REGARDING THE ROBBERY OF THE SECOND ALLEGED VICTIM, WHO WAS NOT AN EMPLOYEE OF THE STORE, SHOULD HAVE BEEN GRANTED. THE CASE LAW MAKES CLEAR THAT A SEPARATE THEFT, OR ATTEMPTED THEFT, IS REQUIRED FOR EACH ROBBERY, AND ONLY ONE WAS PROVEN HERE; ALTERNATIVELY, THE JURY INSTRUCTIONS SHOULD HAVE BEEN TAILORED TO PROPERLY EXPLAIN THAT TWO

A-5978-17T4

SEPARATE ATTEMPTED THEFTS WERE REQUIRED FOR THERE TO BE TWO ROBBERIES.

POINT V

THE SENTENCES SHOULD BE RUN CONCURRENTLY.

I.

Defendant challenges the trial judge's jury charges in several respects. Since he did not object during the trial, we review the claims for plain error. State v. Singleton, 211 N.J. 157, 182 (2012). Generally, a plain error is one that is "clearly capable of producing an unjust result . . . ." R. 2:10-2. Plain error review of jury instructions requires we ask whether a defendant has demonstrated "legal impropriety in the charge prejudicially affecting the substantial rights of the defendant and sufficiently grievous to justify notice by the reviewing court and to convince the court that of itself the error possessed a clear capacity to bring about an unjust result." State v. Chapland, 187 N.J. 275, 289 (2006) (quoting State v. Hock, 54 N.J. 526, 538 (1969)). "[A]ny finding of plain error depends on an evaluation of the overall strength of the State's case." Ibid. Additionally, jury instructions which follow or closely track model charges are generally not considered erroneous. Mogull v. CB Commercial Real

Estate Grp., 162 N.J. 449, 466 (2000); State v. Whitaker, 402 N.J. Super. 495, 513-14 (App. Div. 2008).

Alleged errors in jury instructions are reviewed in the context of the overall charge, not in isolation. Chapland, 187 N.J. at 289. We "consider the overall effect of the charge and look at the language in context to see whether the jury was misled, confused or inadequately informed." Jefferson v. Freeman, 296 N.J. Super. 54, 65 (App. Div. 1996). The charge "as a whole" cannot be misleading, and it must "set[] forth accurately and fairly the controlling principles of law." State v. Sette, 259 N.J. Super. 156, 191 (App. Div. 1992). "[G]reat care is required where the error concerns an element of the offense . . . ." Ibid.

New Jersey's Criminal Code defines "attempt" as occurring in each of the three scenarios:

> (1) Purposely engages in conduct which would constitute the crime if the attendant circumstances were as a reasonable person would believe them to be;
>
> (2) When causing a particular result is an element of the crime, does or omits to do anything with the purpose of causing such result without further conduct on his part; or
>
> (3) Purposely does or omits to do anything which, under the circumstances as a reasonable person would believe them to be, is an act or omission constituting a

> substantial step in a course of conduct planned to culminate in his commission of the crime.
>
> [N.J.S.A. 2C:5-1(a).]

Further, "an attempt must be purposeful and no lesser mental state will suffice . . . ." State v. Jackmon, 305 N.J. Super. 274, 298 (App. Div. 1997).

The model jury charge for first-degree robbery states:

> . . . the State must prove, beyond a reasonable doubt, that the defendant was in the course of committing a theft. In this connection, you are advised that an act is considered to be "in the course of committing a theft" if it occurs in an attempt to commit the theft, during the commission of the theft itself, or in immediate flight after the attempt or commission.
>
> [Model Jury Charge (Criminal), "Robbery In The First Degree" (rev. Sept. 10, 2012).]

The charge also directs the trial judge to define attempt where relevant. Ibid.

Defendant contends the trial judge erred by not properly defining the elements of attempt. The State concedes the judge did not specifically define attempt as it related to the robbery charges, but asserts that the omission was not reversible error because she properly defined it elsewhere in the instructions.

When a trial judge must charge on robbery based on an attempted theft, the court must charge the jury on all the elements of the substantive crime. See State v. Dehart, 430 N.J. Super. 108, 118-20 (App. Div. 2013); State v.

<u>Gonzalez</u>, 318 N.J. Super. 527, 534-35 (App. Div. 1999), <u>abrogated on other grounds</u>, <u>State v. Hill</u>, 199 N.J. 545, 565-66 (2009). However, this court has also held that the failure to define attempt as to one substantive crime is not reversible error when it is done "fully and accurately" elsewhere as to other crimes. <u>State v. Smith</u>, 322 N.J. Super. 385, 398-400 (App. Div. 1999).

Here the judge defined attempt when charging attempted murder. She identified the pertinent category of attempt[2] and fully explained the two required elements. This puts the case squarely within the holding of <u>Smith</u>. Thus, looking at the charges as a whole, the jury was properly instructed on the elements of attempt. Defendant's argument on this point lacks merit.

Defendant argues that the jury should have been instructed on the theory of accomplice liability. We do not agree. The fact he was one of four men who fired five different guns at the victims does not diminish the fact that he was captured on video standing over the victim shooting into his body repeatedly. Certainly, had the State's theory been grounded in accomplice liability, that

---

[2]  For attempted murder, the trial judge read the part of charge for "Attempt-Substantial Step." <u>See</u> <u>Model Jury Charge (Criminal)</u>, "Attempted Murder" (approved Dec. 7, 1992). Neither party argues that this was the wrong type of attempt for the attempted murder charge nor do they argue that it was the wrong type of attempt for the robbery charges. The facts of the case indicate that defendant took a substantial step in the commission of both crimes. The same principles apply for the attempted murder charge and the robbery charges.

instruction would have been necessary. But the State's theory of the case, supported by the video, was that defendant himself perpetrated a violent attack upon King. Defendant was a principal, not merely an accomplice. Therefore, the judge did not commit an error by failing to charge on the subject.

## II.

Defendant contends that the judge's reading of the indictment, which included the incorrect state of mind—knowing—was reversible error. He relies upon State v. Rhett, 127 N.J. 3 (1992), in support of his position. There, the Supreme Court reversed a conviction for attempted murder where the trial court mistakenly charged that the defendant could be found guilty of an attempt to commit murder with a "knowing" state of mind. Id. at 7-8.

The distinction between Rhett and this case is that despite the error in the indictment,[3] the judge here correctly instructed the jury. Juries are assumed to follow instructions, and there is no basis for us to conclude that they would not have done so in this case. State v. Burns, 192 N.J. 312, 335 (2007).

---

[3] None of the participants appear to have noticed the error, and it is not referred to anywhere in the record.

III.

Defendant asserts that the trial judge erred in denying his motion for acquittal on the robbery charge related to Salaam because it was not a separate robbery from the robbery of King. Appellate review of the denial of a motion for judgment of acquittal is de novo, using the same standard as the trial court to determine whether acquittal was warranted. State v. Cruz-Pena, 459 N.J. Super. 513, 520 (App. Div. 2019). This court must assess "whether the State presented sufficient evidence to defeat an acquittal motion." Ibid. (quoting State v. Dekowski, 218 N.J. 596, 608 (2014)). "We must determine whether, based on the entirety of the evidence and after giving the State the benefit of all its favorable testimony and all the favorable inferences drawn from that testimony, a reasonable jury could find guilt beyond a reasonable doubt." Dekowski, 218 N.J. at 608.

When dealing with multiple potential victims, "each robbery [must be] a separate crime, which entails a discrete theft from a single victim together with accompanying injury or force." State v. Sewell, 127 N.J. 133, 137 (1992). The mere presence of a threatened bystander does not support a separate robbery charge for that bystander. See State v. Mirault, 92 N.J. 492, 497 n.4 (1983).

14

Defendant argues that the discrete theft was of the store cash, not any property personally owned by King or Salaam. There was, however, ample proof that justified denial of defendant's motion for judgment of acquittal on those grounds.

A reasonable jury could find defendant guilty of separate robberies since the two men heard the perpetrators demanding "the money." It is reasonable to assume that the assailants would have taken from the employees any available cash and objects of value, including cell phones. Viewing the evidence in the light most favorable to the prosecution, as the trial judge must in deciding a Reyes[4] motion, it was properly denied. The armed assailants' demand for money without specification establishes the intent to rob the two victims.

Defendant also contends that the trial judge erred by not instructing the jury that it must find two separate attempted thefts to find defendant guilty of two separate robberies. No law supports the argument. It does not seem inherently logical or otherwise meritorious. Two men behind the counter in a store were simultaneously threatened at gunpoint, and one was gravely injured. No instruction was necessary under these facts.

---

[4] State v. Reyes, 50 N.J. 454 (1967).

Furthermore, the jury found defendant guilty of two separate degrees of robbery—first-degree as to King, and second-degree as to Salaam. That no distinction was made in the instruction was not error. Jurors are told to use their common sense and everyday experiences in reaching their decision. Model Jury Charge (Criminal), "Criminal Final Charge" (rev. May 12, 2014). A jury would not convict of robberies in two different degrees against two different persons without concluding that an attempted theft had occurred as to each.

Defendant argues that since Salaam was not an employee of the store, separate jury instructions were necessary in order for the jury to understand that they had to find defendant guilty of separate attempted thefts. This argument lacks merit because even if Salaam was not an employee responsible for the cash in the register, like any other robbery victim, he would assume that not only did the robbers want to take the proceeds from the register, but that they would take his personal property as well.

IV.

Trial judges must separately state reasons for imposing a concurrent or consecutive sentence. State v. Miller, 205 N.J. 109, 129 (2011). If the sentencing court properly evaluates the enumerated factors in State v. Yarbough, 100 N.J. 627, 643-44 (1985), "the court's decision will not normally be disturbed

on appeal." Miller, 205 N.J. at 129. Additionally, consecutive sentences are not an abuse of discretion when separate crimes involve separate victims, separate acts of violence, or occur at separate times. State v. Roach, 146 N.J. 208, 230 (1996).

Defendant objects to the imposition of a consecutive sentence for Salaam's robbery because the men were victimized during one incident. In this case, the judge addressed all the Yarbough factors in detail, highlighting the commission of the crimes against two separate victims. Thus, we see no abuse of discretion. State v. Roth, 95 N.J. 334, 364 (1984). The sentence does not shock our conscience.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5978-17T4